NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 190404-U

NO. 4-19-0404

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 23, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| CLINTON YOUNG, | ) | Appeal from |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| THE ILLINOIS DEPARTMENT OF CORRECTIONS | ) | No. 18MR568 |
| and JOHN BALDWIN, in His Official Capacity as | ) | |
| Director of Corrections, | ) | Honorable |
| Defendants-Appellees. | ) | Rudolph M. Braud Jr., |
| | ) | Judge Presiding. |

JUSTICE HOLDER WHITE delivered the judgment of the court.
Justices DeArmond and Turner concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The circuit court's dismissal of plaintiff's *mandamus* complaint was proper.

¶ 2   Plaintiff, Clinton Young, appeals from the dismissal of his *pro se* complaint seeking an order of *mandamus* under section 14-101 of the Code of Civil Procedure (Procedure Code) (735 ILCS 5/14-101 *et seq.* (West 2016)) against defendants, the Illinois Department of Corrections (DOC) and John Baldwin, Director of Corrections. We affirm the Sangamon County circuit court's judgment.

¶ 3                     I. BACKGROUND

¶ 4   Plaintiff is an individual who was formerly incarcerated at the Dixon Correctional Center (Dixon) in Dixon, Illinois, where he was serving concurrent 60-year sentences following his 1993 convictions for armed robbery and murder. *Inmate Search*, Illinois Department of

Corrections, https://www2.illinois.gov/idoc/Offender/pages/inmatesearch.aspx (last visited October 28, 2020). According to the DOC website, plaintiff was ostensibly released from Dixon in January 2020 and is currently serving a three-year term of mandatory supervised release (MSR). *Id.* While incarcerated at Dixon, plaintiff completed several programs, including (1) the requirements of the High School Level Tests of General Education Development (*i.e.*, his "GED"), (2) an associate's degree in general studies from Lincoln Trail College, (3) Lifestyle Redirection, and (4) a certificate program in construction occupations from Lakeland College.

¶ 5        In July 2018, plaintiff filed *pro se* a complaint for *mandamus* under section 14-101 of the Procedure Code (735 ILCS 5/14-101 (West 2016)), seeking an order compelling defendants to (1) award him 36 months of sentencing credit for his participation in the previously mentioned programs while in the custody of DOC, (2) credit him toward his MSR term for every day past his self-imposed January 1, 2018, release date, and (3) compensate him for "every day he does after [January 1, 2018,] for false imprisonment."

¶ 6        In January 2019, defendants filed a motion to dismiss the complaint under section 2-619 of the Procedure Code (*id.* § 2-619). In their memorandum in support of their motion, defendants argued (1) plaintiff was statutorily barred from receiving the requested relief because he was serving a sentence for murder and (2) plaintiff's request for sentencing credit involved the exercise of discretion and therefore *mandamus* was not an appropriate avenue for relief. Plaintiff filed a response to defendants' motion, arguing (1) he was not statutorily barred from relief based on his conviction for murder because he was convicted prior to June 19, 1998, and (2) the nature of the relief he requested was mandatory rather than discretionary.

¶ 7        According to a docket entry by the Sangamon County circuit court, the court granted defendants' motion in May 2019 following a telephonic hearing. An additional docket

entry states the court entered a written order dismissing the complaint in June 2019; we note, however, the order does not appear in the record on appeal. Additionally, the record contains no report of proceedings or bystander's report from the hearing on defendants' motion to dismiss.

¶ 8        This appeal followed.

¶ 9                                II. ANALYSIS

¶ 10        On appeal, plaintiff argues (1) the Sangamon County circuit court "erroneously dismissed Plaintiff's [complaint for] Mandamus for Non-Retroactive reasons never argued, explained, or presented by the Defendant[s]" until the May 2019 hearing and (2) "the plain language of the Illinois Statutory Provisions regarding Earned Program Sentence Credit is clearly Mandatory," and therefore *mandamus* was an appropriate avenue for relief. We affirm.

¶ 11                            A. Standard of Review

¶ 12        Defendants' motion sought to dismiss plaintiff's complaint for *mandamus* under section 2-169 of the Procedure Code (735 ILCS 5/2-619 (West 2016)). "With a section 2-619 motion to dismiss, the movant admits the sufficiency of the complaint but asserts an affirmative matter that defeats the claim." *Tolbert v. Godinez*, 2020 IL App (4th) 180587, ¶ 18, 142 N.E.3d 415. A motion to dismiss under section 2-619(a)(9) of the Procedure Code allows for the involuntary dismissal of a cause of action on the ground "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2016). We review the grant of a section 2-619 motion to dismiss *de novo*. *Tolbert*, 2020 IL App (4th) 180587, ¶ 18. We additionally note that we may affirm the circuit court's judgment on any basis supported by the record. *O'Callaghan v. Satherlie*, 2015 IL App (1st) 142152, ¶ 17, 36 N.E.3d 999.

¶ 13                            B. *Mandamus* Relief

¶ 14    " '*Mandamus* is an extraordinary remedy used to compel a public official to perform a purely ministerial duty where no exercise of discretion is involved.' " *Sharp v. Baldwin*, 2020 IL App (2d) 181004, ¶ 9, 151 N.E.3d 725 (quoting *People ex rel. Alvarez v. Skryd*, 241 Ill. 2d 34, 38, 944 N.E.2d 337, 341 (2011)). "A writ of *mandamus* will issue only if the petitioner establishes (1) a clear right to the relief requested, (2) a clear duty of the public official to act, and (3) clear authority in the public official to comply with the writ." *Id.*

¶ 15                      C. Sentencing Credit

¶ 16    Plaintiff asserts he is entitled to 36 months of additional sentence credit under section 3-6-3(a)(4) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/3-6-3(a)(4) (West 2018)). To aid in understanding the application of section 3-6-3(a)(4) to plaintiff's *mandamus* complaint, we outline, below, the history regarding amendments to the statute and the statute's current language.

¶ 17    Public Act 86-1373, which was effective September 10, 1990, added subsection (a)(4) to section 3-6-3 of the Unified Code. The new section provided the good conduct credit accumulated under section 3-6-3(a)(2) for each day of service in prison should be multiplied by 1.25 when the inmate engaged in certain programs. Pub. Act 86-1373 (eff. Sept. 10, 1990) (adding 730 ILCS 5/3-6-3(a)(4)). However, the provision excluded individuals who were convicted of first degree murder, second degree murder, or a Class X felony from receiving the additional sentence credit. Pub. Act 86-1373 (eff. Sept. 10, 1990) (adding 730 ILCS 5/3-6-3(a)(4)). Later, Public Act 88-311, which was effective August 11, 1993, amended section 3-6-3(a)(4) and changed the multiplier to provide programs satisfactorily completed before the effective date of the amendment shall be multiplied by a factor of 1.25 and 1.50 for program participation on or after the effective date of the amendment. Public Act 88-311 also added more

offenses that were excluded from receiving the additional sentence credit. Pub. Act 88-311 (eff. Aug. 11, 1993) (amending 730 ILCS 5/3-6-3(a)(4)). Public Act 90-592, which was effective on June 19, 1998, made significant changes to section 3-6-3 in its entirety but neither changed the multiplier nor the Class X exclusion related to the additional sentence credit. Subsequent amendments added more offenses excluded from the additional sentence credit.

¶ 18        In 2017, the legislature passed Public Act 100-3, which was effective January 1, 2018, and made the sweeping changes to section 3-6-3 of the Unified Code that are at issue in this appeal. Section 3-6-3(a)(4) of the Unified Code as amended by Public Act 100-3 provided, in pertinent part, as follows:

> "Except as provided in paragraph (4.7) of this subsection (a), the rules and regulations shall also provide that the sentence credit accumulated and retained under paragraph (2.1) of subsection (a) of this Section by any inmate during specific periods of time in which such inmate is engaged full-time in substance abuse programs, correctional industry assignments, educational programs, behavior modification programs, life skills courses, or re-entry planning provided by the Department under this paragraph (4) and satisfactorily completes the assigned program as determined by the standards of the Department, shall be multiplied by a factor of 1.25 for program participation before August 11, 1993 and 1.50 for program participation on or after that date." 730 ILCS 5/3-6-3(a)(4) (West 2018).

¶ 19        Section 3-6-3(a) (4.7) of the Unified Code provided as follows:

> "On or after the effective date of this amendatory Act of the 100th General Assembly, sentence credit under paragraph (3), (4), or (4.1) of this subsection (a)

may be awarded to a prisoner who is serving a sentence for an offense described in paragraph (2), (2.3), (2.4), (2.5), or (2.6) for credit earned on or after the effective date of this amendatory Act of the 100th General Assembly; provided, the award of the credits under this paragraph (4.7) shall not reduce the sentence of the prisoner to less than the following amounts:

(i) 85% of his or her sentence if the prisoner is required to serve 85% of his or her sentence; or

(ii) 60% of his or her sentence if the prisoner is required to serve 75% of his or her sentence, except if the prisoner is serving a sentence for gunrunning his or her sentence shall not be reduced to less than 75%.

This paragraph (4.7) shall not apply to a prisoner serving a sentence for an offense described in subparagraph (i) of paragraph (2) of this subsection (a)." 730 ILCS 5/3-6-3(a)(4.7) (West 2018).

Public Act 100-3 additionally removed the restriction preventing Class X offenders from receiving credits provided by section 3-6-3(a)(4). Pub. Act 100-3 (eff. Jan. 1, 2018) (amending 730 ILCS 5/3-6-3(a)(4)).

¶ 20 In August 2019, the legislature amended section 3-6-3(a)(4) again by adding the following language:

"(B) The Department shall award sentence credit under this paragraph (4) accumulated prior to the effective date of this amendatory Act of the 101st General Assembly in an amount specified in subparagraph (C) of this paragraph (4) to an inmate serving a sentence for an offense committed prior to June 19,

1998, if the Department determines that the inmate is entitled to this sentence credit, based upon:

(i) documentation provided by the Department that the inmate engaged in any full-time substance abuse programs, correctional industry assignments, educational programs, behavior modification programs, life skills courses, or re-entry planning provided by the Department under this paragraph (4) and satisfactorily completed the assigned program as determined by the standards of the Department during the inmate's current term of incarceration; or

(ii) the inmate's own testimony in the form of an affidavit or documentation, or a third party's documentation or testimony in the form of an affidavit that the inmate likely engaged in any full-time substance abuse programs, correctional industry assignments, educational programs, behavior modification programs, life skills courses, or re-entry planning provided by the Department under paragraph (4) and satisfactorily completed the assigned program as determined by the standards of the Department during the inmate's current term of incarceration.

(C) If the inmate can provide documentation that he or she is entitled to sentence credit under subparagraph (B) in excess of 45 days of participation in those programs, the inmate shall receive 90 days of sentence credit. If the inmate cannot provide documentation of more than 45 days of participation [in] those programs, the inmate shall receive 45 days of sentence credit. In the event of a disagreement between the Department and the inmate as to the amount of credit accumulated under subparagraph (B), if the Department provides documented

proof of a lesser amount of days of participation in those programs, that proof shall control. If the Department provides no documentary proof, the inmate's proof as set forth in clause (ii) of subparagraph (B) shall control as to the amount of sentence credit provided." Pub. Act 101-440 (eff. Jan. 1, 2020) (amending 730 ILCS 5/3-6-3(a)(4)).

¶ 21                                    1. *Retroactivity*

¶ 22        Plaintiff contends the amendment made by Public Act 100-3 applies to him retroactively, and thus, he was entitled to the application of the appropriate multiplier to all eligible programs that he had already satisfactorily completed. In support of his argument, plaintiff noted the following language from section 3-6-3(a)(4) of the Unified Code (730 ILCS 5/3-6-3(a)(4) (West 2018)): "multiplied by a factor of 1.25 for program participation before August 11, 1993 and 1.50 for program participation on or after that date." Defendants disagree, asserting the amendment made by Public Act 100-3 is prospective.

¶ 23        The Illinois Supreme Court has adopted the two-part analysis for determining retroactivity established by the United States Supreme Court in *Landgraf v. USI Film Products*, 511 U.S. 244 (1994). *People ex rel. Alvarez v. Howard*, 2016 IL 120729, ¶ 19, 72 N.E.3d 346. Under the *Landgraf* test, we first ask whether the legislature clearly indicated the temporal reach of the amended statute. *Howard*, 2016 IL 120729, ¶ 19. "If so, then that expression of legislative intent must be given effect, absent a constitutional prohibition. [Citation.] If not, then the court proceeds to step two and determines whether the statute would have a retroactive impact." *Id.* However, an Illinois court does not need to go beyond step one of the *Landgraf* test because the legislature has clearly set forth the temporal reach of every amended statute in section 4 of the Statute on Statutes (5 ILCS 70/4 (West 2014)). *Id.* ¶ 20. Section 4 of the Statute on Statutes is a

- 8 -

general savings clause, which the Illinois Supreme Court has interpreted as meaning "procedural changes to statutes will be applied retroactively, while substantive changes are prospective only." *Id.*

¶ 24 The only temporal reference in the amendment made by Public Act 100-3 is contained in section 3-6-3(a)(4.7), which states, in pertinent part, the following:

"On or after the effective date of this amendatory Act of the 100th General Assembly, sentence credit under paragraph (3), (4), or (4.1) of this subsection (a) may be awarded to a prisoner who is serving a sentence for an offense described in paragraph (2), (2.3), (2.4), (2.5), or (2.6) for *credit earned on or after the effective date* of this amendatory Act of the 100th General Assembly ***." (Emphasis added.) Pub. Act 100-3 (eff. Jan. 1, 2018) (adding 730 ILCS 5/3-6-3(a)(4.7)).

¶ 25 Within the section's plain language, the amendment has a prospective application. We note the Second District recently reached the same conclusion in *Sharp*, 2020 IL App (2d) 181004, ¶ 12. Even in the absence of that language in Public Act 100-3, the amendment makes substantive changes, which are prospective only. See 5 ILCS 70/4 (West 2018). We note the language cited by plaintiff in support of his argument was included in Public Act 88-311 (eff. Aug. 11, 1993) (amending 730 ILCS 5/3-6-3(a)(4)), and not Public Act 100-3, which removed the Class X exclusion. Thus, we find the amendment made by Public Act 100-3 applies prospectively only.

¶ 26 We find support for our conclusion in the language of the amendment made by Public Act 101-440 (eff. Jan. 1, 2020) (adding 730 ILCS 5/3-6-3(a)(4)(B)), which expressly provides for sentence credit under section 3-6-3(a)(4) accumulated *prior* to the effective date of

the amendment to an individual serving a sentence for an offense committed prior to June 19, 1998. Public Act 101-440 also discusses the necessary evidence for determining the sentence credit and the amount of the sentence credit, which is different from the multipliers. Pub. Act 101-440 (eff. Jan. 1, 2020) (adding 730 ILCS 5/3-6-3(a)(4)(B), (C)); see also *People v. Washington*, 2019 IL App (1st) 172372, ¶ 9, 130 N.E.3d 77 (concluding Public Act 100-3 did not apply to a petitioner's request for sentence credit for programs completed prior to the effective date of the amendment).

¶ 27        Thus, plaintiff is only entitled to additional sentence credit under section 3-6-3(a)(4) of the Unified Code (730 ILCS 5/3-6-3(a)(4) (West 2018)) for programs completed *after January 1, 2018.* As of January 1, 2020, petitioner may also be entitled to additional sentence credit under section 3-6-3(a)(4)(B) for his completion of programs before January 1, 2018. See Pub. Act 101-440 (eff. Jan. 1, 2020) (adding section 730 ILCS 5/3-6-3(a)(4)(B)).

¶ 28                                    2. *Exhaustion*

¶ 29        Finally, defendants contend the aforementioned possible avenues for additional sentence credit being awarded to plaintiff do not require reversal of the circuit court's dismissal because plaintiff did not exhaust his administrative remedies. We agree with defendants.

¶ 30        This court has recognized " '[t]he doctrine of exhaustion of administrative remedies applies to grievances filed by inmates.' " *Montes v. Taylor*, 2013 IL App (4th) 120082, ¶ 12, 985 N.E.2d 1037 (quoting *Ford v. Walker*, 377 Ill. App. 3d 1120, 1124, 888 N.E.2d 123, 127 (2007)). The doctrine of exhaustion of administrative remedies provides " '[a] party aggrieved by an administrative decision cannot seek judicial review unless he has first pursued all available administrative remedies.' " *Id.* (quoting *Ford*, 377 Ill. App. 3d at 1124). Where an

inmate fails to show his or her grievance had administrative finality, the inmate does not meet his or her burden of showing exhaustion of administrative remedies. *Id.* Here, the record shows the January 24, 2018, grievance filed by plaintiff was based on his completion of programs before January 1, 2018. Accordingly, plaintiff has not shown he pursued all administrative remedies available to him as to sentence credit under section 3-6-3(a)(4) for programs completed under sections 3-6-3(a)(4)(B) and 3-6-3(a)(4)(C) for his completion of programs before January 1, 2018, as provided by Public Act 101-440 (eff. Jan. 1, 2020) (adding section 730 ILCS 5/3-6-3(a)(4)(B), (C)). Here, petitioner may have in fact already received such additional sentence credit as it appears he was released from Dixon in January 2020 and is serving his three-year term of MSR.

¶ 31 Accordingly, we find the circuit court's dismissal of plaintiff's complaint for *mandamus* relief was proper.

¶ 32 III. CONCLUSION

¶ 33 For the reasons stated, consistent with Illinois Supreme Court Rule 23(b) (eff. Apr. 1, 2018), we affirm the Sangamon County circuit court's judgment.

¶ 34 Affirmed.