NOTICE
Decision filed 02/10/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 180458-U

NO. 5-18-0458

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jefferson County. |
| | ) | |
| v. | ) | No. 11-CF-188 |
| | ) | |
| CHRISTOPHER WELLS, | ) | Honorable |
| | ) | Johannah B. Weber, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE WHARTON delivered the judgment of the court.
Presiding Justice Boie and Justice Welch concurred in the judgment.

**ORDER**

¶ 1    *Held*: Where transfer of the case to juvenile court when the defendant was 22 years old was outside of the scope of the statutory authority for juvenile court cases, any procedural error in doing so was harmless, and we affirm the sentence. Where the outcome of the case would have been the same even if appointed counsel filed a motion to transfer the case to juvenile court before the defendant turned 21, we affirm the sentence. Where the defendant did not raise the issue of whether the trial court judge should have disqualified herself from the case, we find that he waived the issue, and we affirm the sentence.

¶ 2    The defendant, Christopher Wells, was 15 years old when he and three other teenagers killed 75-year-old cab driver Charles Ellis during an attempted robbery. Two of the teenagers, including the defendant, were armed. The defendant pled guilty to one count of first degree murder on May 9, 2012, in exchange for the State's dismissal of three remaining first degree murder counts and the defendant's cooperation with law enforcement and the prosecution of his codefendants.

1

On January 31, 2018, the defendant was sentenced to 26 years in prison to be followed by 3 years of mandatory supervised release. The defendant filed a motion for resentencing in juvenile court, or, alternatively, to reduce his sentence. On September 18, 2018, the trial court denied this motion.

¶ 3 On appeal, the defendant argues that (1) he was improperly prosecuted in a criminal court when his case belonged in juvenile court; (2) he was deprived of effective assistance of counsel because his attorney failed to seek retroactive application of section 5-130(1)(a) of the Juvenile Court Act of 1987 (705 ILCS 405/5-130(1)(a) (West 2016)), a transfer from criminal court to juvenile court, and sentencing in juvenile court; and (3) the sentencing judge should have disqualified herself from this case due to her past representation of the defendant in this case. We affirm.

¶ 4                                    I. BACKGROUND

¶ 5 On May 31, 2011, 75-year-old cab driver Charles Ellis was found dead in his cab due to a gunshot wound. Evidence produced during the defendant's September 26, 2017, discretionary transfer hearing pursuant to section 5-805(3) of the Juvenile Court Act of 1987 (*id.* § 5-805(3)) demonstrated that there were four teenagers involved in the criminal activity that resulted in Ellis's death: the defendant, Demandre Black, Mark Taylor, and Damondros James. The four teenagers intended to rob a cab driver. The defendant informed police that Demandre Black used a cell phone to call the first cab. The plan was that the defendant and Mark Taylor would enter the cab, with the intent that Demandre Black and Damondros James would assist in robbing a cab driver when the cab stopped for the defendant and Mark Taylor to exit. The first driver became suspicious and drove away before the plan could be fully enacted. Ellis was the second cab driver called.

¶ 6 Upon learning of the shooting, Mt. Vernon officers performed a canvass of the area to try to locate the persons involved in the shooting and attempted robbery of Ellis. The officers learned

2

that there were possible suspects in the home of Jykeece Oliver. Oliver consented to a search of her home, and police discovered the defendant, Demandre Black, and Mark Taylor in a bedroom. The defendant was on a mattress when discovered in the bedroom. Later, the Mt. Vernon police discovered a .380 caliber gun under that mattress.

¶ 7     The pathologist who conducted the autopsy removed a .22 caliber bullet from Ellis's body. A .380 caliber slug was found in Ellis's taxi in the area between the driver's side front and rear doors. The officers connected the .22 caliber gun to codefendant Damondros James.

¶ 8     On June 1, 2011, four days before the defendant's sixteenth birthday, the State charged him with three counts of first degree murder. Count I alleged that the defendant shot Ellis knowing that the act would cause Ellis's death, and that he discharged a firearm while committing this offense. 720 ILCS 5/9-1(a)(1) (West 2010). Count II alleged that the defendant shot Ellis knowing that the act created a strong probability of death or great bodily harm to Ellis, and that he discharged a firearm while committing this offense. *Id.* § 9-1(a)(2). Count III alleged that the defendant, while committing an attempt armed robbery, shot Ellis, causing his death, and that he discharged a firearm while committing this offense. *Id.* § 9-1(a)(3). All three counts contained a mandatory 20-year sentence enhancement for the defendant's discharge of a firearm. 730 ILCS 5/5-8-1(a)(ii) (West 2010).

¶ 9     In August 2011, the trial court found the defendant to be unfit and ordered that he undergo mental health treatment. In January 2012, the court determined that he had been restored to fitness.

¶ 10    In early February 2012, the defendant's appointed attorney, Sean Featherstun, filed a motion to suppress statements the defendant made to the police. The trial court granted that motion on March 21, 2012. The State then filed a certificate of substantial impairment and a notice of appeal to this court. The Office of the State Appellate Defender was appointed to represent the

3

defendant. In mid-April 2012, the Deputy Defender of the Office of the State Appellate Defender, Fifth Judicial District, Johannah B. Weber, entered her appearance as counsel on the defendant's behalf.

¶ 11 On April 30, 2012, the State filed a motion to dismiss the appeal informing this court that the defendant was going to plead guilty at a hearing on May 9, 2012. This court remanded the case to the trial court for the limited purpose of allowing the defendant to plead guilty.

¶ 12 On the date of the plea hearing, the State filed a supplemental information that added a fourth count to the indictment. The State charged the defendant with first degree murder in that while committing an attempt robbery, the defendant performed various acts which caused Ellis's death. 720 ILCS 5/9-1(a)(3) (West 2010). On that same date, the defendant, who was then 16 years old, signed a plea of guilty to count IV which was tendered to the court and filed. The trial court found that the plea was entered on a knowing and voluntary basis. The State announced that the defendant was pleading open, and that as a condition of his plea, the defendant promised to fully cooperate with law enforcement and the prosecution of Demandre Black, Mark Taylor, and Damondros James. The defendant's cooperation would include preparation for the trials and testimony against his codefendants.

¶ 13 The State provided its factual basis if the case against the defendant proceeded to trial. The State indicated that it would call Sergeant Victor Kuntz and other Mt. Vernon officers and detectives. These individuals would testify that on May 31, 2011, they responded to a report of an attempted robbery near the intersection of 6th and Bell in Mt. Vernon. When the responding officers arrived, the officers found an American Cab vehicle stopped on the street with Charles Ellis in the driver's seat. Litton Ambulance emergency medical technicians were present at the scene, and Ellis was pronounced dead. American Cab employees would be called to testify that

4

shortly before the police reported to the scene, Ellis carried a fare from 604 Conger in Mt. Vernon to the area of 6th and Bell. Officers traced the phone call that was made to American Cab to initiate the pickup back to Demandre Black's cell phone.

¶ 14 The Mt. Vernon officers also canvassed the area around 6th and Bell to conduct interviews. In doing so, the officers were directed to the apartment on 6th Street occupied by Jykeece Oliver. Oliver provided consent to the officers to search her apartment. In conducting the search, officers found and apprehended the defendant, Demandre Black, and Mark Taylor.

¶ 15 At trial, the State would call Demandre Black and Mark Taylor to testify that Mark Taylor and the defendant rode in Charles Ellis's cab from 604 Conger to 6th and Bell with the plan of robbing Ellis. When Mark Taylor and the defendant arrived in Ellis's cab, Demandre Black and Damondros James appeared, and the four individuals attempted to rob Ellis of money. During this attempted robbery, Ellis was injured and then tried to drive away in his cab. The State indicated that it would produce evidence at trial that Ellis died from the injuries sustained during the attempted robbery.

¶ 16 In response to the State's stated factual basis, the defendant's attorney stated that it was his understanding that if the matter went to trial, the State would present that evidence. On the State's motion, the court dismissed counts I, II, and III. The court then approved the defendant's entry of his plea of guilty on count IV and stated that, as part of the plea, he had agreed to cooperate with the State and provide testimony in the cases of his codefendants. The State then stated on the record that its plan was to dispose of the codefendants' cases because the defendant was a cooperative witness, and then schedule the defendant's sentencing. The defendant's attorney stated that he and his client hoped to resolve this case by the end of 2012.

5

¶ 17　　On May 8, 2013, the trial court held a pretrial hearing on sentencing. The court noted that the defendant had filed a motion to withdraw his guilty plea. The defendant's attorney, Sean Featherstun, informed the court that this was essentially a procedural matter in that the defendant could not file a motion to withdraw his guilty plea until after sentencing, which had not yet occurred. The defendant's attorney made a motion to withdraw the defendant's motion and stated that the defendant understood that if he wanted to seek to withdraw his guilty plea that he needed to wait until the court sentenced him. Attorney Featherstun informed the court that the defendant still intended to honor his cooperation agreement with the State.

¶ 18　　On September 9, 2014, attorney Sean Featherstun filed his motion for leave to withdraw. The trial court granted the motion and appointed T.J. Parrish as the defendant's attorney.

¶ 19　　On January 1, 2016, the legislature amended section 5-130(1)(a) of the Juvenile Court Act. Pub. Act 99-58 (eff. Jan. 1, 2016). The definition of a delinquent minor was amended. If the State charged a minor with first degree murder and if the minor was 16 years of age on the date of the murder, that minor could not be classified as a delinquent minor. When Ellis was murdered in May 2011, the statute required that if the minor was 15 years old when he or she committed first degree murder, the minor could not be classified as a delinquent minor and was automatically subjected to criminal court. 705 ILCS 405/5-130(1)(a) (West 2010). On the effective date of the statute's amendment, the defendant was 20 years of age. On June 5, 2016, the defendant turned 21 years of age.

¶ 20　　On August 4, 2017, the defendant's new attorney, T.J. Parrish, filed a motion to transfer the case from criminal court to juvenile court. Counsel alleged that "the proper jurisdiction for this matter at the present time is juvenile court." On August 7, 2017, after a hearing, the trial court found that the legislative amendment to section 5-130 of the Juvenile Court Act of 1987, and the

Illinois Supreme Court's decision issued December 1, 2016, in *People ex rel. Alvarez v. Howard*, 2016 IL 120729, ¶ 28, stating that the amendment is retroactive, required the court to transfer the case to juvenile court. The State filed a petition for a discretionary transfer from juvenile court to criminal court. On August 8, 2017, the State filed a petition for adjudication of wardship in juvenile court and alleged the original three counts of first degree murder and the supplemental fourth count of first degree murder.

¶ 21    The trial court conducted a discretionary transfer hearing on September 26, 2017. The testimony and evidence adduced during that hearing is stated earlier in this order in paragraphs 5, 6, and 7. At the conclusion of the hearing, the trial court took the matter under advisement. On October 10, 2017, the trial court made findings consistent with section 5-805(3) of the Juvenile Court Act of 1987 (705 ILCS 405/5-805(3) (West 2016))—discretionary transfer. The court noted that the defendant was 15 when the crime was committed; that he had a small prior history of delinquency; that the defendant did not suffer physical abuse in his household, but he did witness his father physically abuse his mother; that his father had no relationship with him; that the defendant began hanging out with older teenagers after the defendant's brother committed suicide; that the defendant participated in the planning of this crime; and that the defendant possessed a deadly weapon when the crime was committed. The court considered the mental health issues the defendant suffered after the commission of this crime and indicated that all related reports were considered. The court also considered the seriousness of the offense of murder; that in exchange for his guilty plea on one count, the State dismissed three other counts; and that the defendant had agreed to cooperate with law enforcement in the prosecution of his codefendants. The court finally noted that the defendant was 22 years of age, and thus no advantages of treatment within the juvenile justice system existed. The trial court indicated that extended juvenile jurisdiction was

7

considered but granted the State's discretionary transfer motion and dismissed the petition for adjudication of wardship.

¶ 22    On November 17, 2017, the trial court held the sentencing hearing. The State asked the court to take judicial notice of the transcript and exhibits presented at the September 26, 2017, discretionary transfer hearing. The State then called Bobby Ellis, the victim's son, to testify. Bobby Ellis testified that his father was well-known in Mt. Vernon as he worked for several local businesses throughout his life. He stated that the family was struggling with not being able to have him in their lives. Bobby Ellis testified that his parents had been married for 50 years, and that they had nine children. Bobby Ellis's mother passed away one year after the murder because she "grieved herself to death."

¶ 23    The defendant's attorney asked the trial court to take judicial notice of the motion to transfer the criminal case to juvenile court, which included psychiatric evaluations and forensic treatment reports. In addition, the defendant's attorney asked the trial court to take judicial notice of the defendant's presentence investigation report (PSI) and the testimony of the defendant's mother from the September 26, 2017, discretionary transfer hearing.

¶ 24    The defendant provided his statement in allocution. The defendant expressed his remorse for what happened on May 31, 2011, and asked the Ellis family for forgiveness. Since being arrested and incarcerated, the defendant stated that he had greatly changed. He explained that he had been on a destructive path in his youth, and that he had no male father figure to steer him in the right direction, which resulted in his turn to the streets. The defendant testified that he was the only one of his codefendants who had stepped up to help the Ellis family obtain justice. He asked the court for mercy but said that he was willing to step up and accept his responsibility for his involvement in Ellis's death.

8

¶ 25     The defendant's attorney asked the court to sentence the defendant to a term of 20 years imprisonment. The State recommended a sentence cap of 26 years' imprisonment because of the defendant's cooperation in the Mark Taylor case.

¶ 26     At the conclusion of the sentencing hearing, the trial court took the matter under advisement to review the transcripts and documents utilized by the State and the defendant.

¶ 27     The PSI was filed before sentencing on May 30, 2017. The defendant's father and his mother were together, but not married, for 11 years. Throughout that time, the defendant's father physically abused the defendant's mother. The defendant remembers witnessing this abuse. He had one brother and three maternal half-brothers. The defendant and his family moved to Mt. Vernon in 2010. He enrolled as a sophomore at Mt. Vernon Township High School. He was diagnosed with a learning disability and had an individual educational plan. While the defendant's academic success was deemed satisfactory, his behaviors in and out of the classroom became troubling, and he had ongoing truancy issues. The defendant was attending school while incarcerated. The defendant appeared to be in good physical condition. In June 2011, the defendant was admitted to Streamwood Behavioral Health Center for a mental health evaluation. He was diagnosed with depression and disruptive behavior disorder. He was prescribed an anti-seizure medication and two different antidepressants. As of the date of the PSI, the defendant was no longer taking any prescription medication. The defendant had juvenile criminal infractions including a burglary in 2009, felony criminal damage to property in 2009, and retail thefts under $150 in 2010 in both St. Clair County and Jefferson County.

¶ 28     On January 31, 2018, the trial court held a hearing to sentence the defendant. The court noted that it had considered the evidence and arguments of counsel, the PSI, the history, character, and attitude of the defendant, the defendant's statement of allocation, and the Ellis family's

9

representative impact statement, as well as all statutory factors in aggravation and in mitigation. In aggravation, the court found that the defendant had a prior history of delinquency; the victim was over 60 years of age; and that the defendant committed the offense while the defendant was in a cab—a vehicle used for public transportation. In mitigation, the court stated that there were no applicable statutory mitigating factors, but noted that the defendant never denied his involvement in the crime and admitted his guilt. The court indicated that the defendant was remorseful for his actions. The court noted that the defendant did not fire the gun that killed Ellis, and that the actual shooter was sentenced to 50 years' imprisonment. The court recognized the defendant's assistance in Mark Taylor's trial and noted that he was the only codefendant who did not refuse to testify. The court stated that this was an important and significant factor that was taken into consideration in reaching its sentencing determination. The court sentenced the defendant to serve 26 years in prison that would have to be served at 100%, and that he would receive credit for the 2444 days he spent in custody.

¶ 29 On February 27, 2018, the defendant filed a motion to vacate sentence and to be resentenced in juvenile court or, alternatively, to reduce his sentence. He alleged that there was insufficient evidence of each statutory factor necessary to support a transfer to adult court. 705 ILCS 405/5-805(3)(b) (West 2016). The defendant also claimed that the 26-year sentence was indiscriminately harsh and violated the Illinois and United States Constitutions.

¶ 30 On March 5, 2018, the defendant filed a *pro se* motion to reduce his sentence. In support of his motion, the defendant stated: "That I was a juvenile 15 y[ea]rs of age. That I didn't commit the offense of murder. That I had mental health problems at the time. That I didn't harm Mr. Ellis. That the person that killed Mr. Ellis got 50 years. In that the juvenile laws are changing."

¶ 31     On July 25, 2018, the defendant's attorney filed an amended motion to vacate sentence and resentence the defendant in juvenile court. The amended motion was similar in content to the initial motion filed on February 27, 2018, except that the defendant did not alternatively ask the court to reduce his sentence.

¶ 32     On September 18, 2018, the trial court held a hearing. The court noted that the court and the attorneys had been uncertain about whether on May 9, 2012, before Judge David Overstreet, the defendant entered a partially negotiated guilty plea or an open guilty plea. In reviewing the court file, the court determined that the defendant had a plea agreement as to the charge only—an open plea. Consequently, the court cited case law and concluded that the defendant did not need to seek to withdraw his open guilty plea, but that he was eligible to appeal the length of his sentence. See *People v. Lumzy*, 191 Ill. 2d 182, 187 (2000) (citing *People v. Evans*, 174 Ill. 2d 320, 322 (1996); *People v. Linder*, 186 Ill. 2d 67, 74 (1999)). Accordingly, the trial court provided the defendant with his appeal rights, which included his need to file a motion regarding his sentence and/or his open plea within 30 days. The defendant's attorney made an oral motion to withdraw his amended motion to vacate the sentence and resentence in juvenile court, which left the initial motion in place that contained the alternative request to reconsider the defendant's sentence. After argument, the trial court denied the defendant's motions.

¶ 33     The defendant filed a timely appeal from the trial court's September 18, 2018, order.

¶ 34                                    II. ANALYSIS

¶ 35     On appeal, the defendant alleges that the State improperly prosecuted him in criminal court although his case belonged in juvenile court and failed to pursue either a transfer from juvenile court to criminal court or extended juvenile jurisdiction before the defendant turned 21. He also alleges that he received ineffective assistance of counsel because his attorney did not seek

11

retroactive application of section 5-130(1)(a) of the Juvenile Court Act of 1987 (705 ILCS 405/5-130(1)(a) (West 2016)), a transfer of the defendant's case to juvenile court, and sentencing of the defendant in juvenile court. Finally, the defendant alleges that this court should vacate the defendant's sentence and remand for a new hearing on the basis that Judge Johannah B. Weber previously represented him in this case.

¶ 36                              A. Improper Prosecution in Criminal Court

¶ 37    At issue in this case is the excluded jurisdiction section of the Juvenile Court Act of 1987 (Act). 705 ILCS 405/5-130 (West 2016). The legislature determined that certain crimes committed by a minor fell into a category that automatically removed the case from the provisions of the Juvenile Court Act. *Id.* First degree murder is one of the crimes that can be strictly confined to criminal courts—"excluding" the case from juvenile court. *Id.* At the time that the defendant was charged with first degree murder in 2011, he was 15 years of age—just five days short of turning 16. The excluded jurisdiction section of the Act applied to minors 15 years of age or older at the time of the offense and who had been charged with first degree murder.[1] 705 ILCS 405/5-130 (West 2010). On January 1, 2016, our legislature amended the excluded jurisdiction section of the Act and modified the age of the minor charged with first degree murder who would be excluded from juvenile court. Pub. Act 99-58 (eff. Jan. 1, 2016). The amendment modified the age of the minor at the time of the offense from 15 to 16. *Id.* Thereafter, the Illinois Supreme Court held that the amendment was retroactive. *People ex rel. Alvarez v. Howard*, 2016 IL 120729, ¶ 28. In this case, because the legislative amendment was retroactive, the defendant, who was 15 when he committed, and was charged with, first degree murder, could not be excluded from juvenile court.

---

[1]In addition to first degree murder, the excluded jurisdiction statute lists the following other crimes that would not be subject to juvenile court process: aggravated criminal sexual assault and several crimes involving aggravated battery with a firearm. 705 ILCS 405/5-130 (West 2010).

12

¶ 38    The State may ask the juvenile court for a discretionary transfer to criminal court at any time before trial begins if the minor was 13 years of age or over and committed a criminal act. 705 ILCS 405/5-805(3)(a) (West Supp. 2015). The State must also allege that there is probable cause to believe that the allegations in the State's motion for a discretionary transfer are true and that it is not in the best interests of the public to proceed with the case in juvenile court. *Id.* The juvenile court must consider the age of the minor, the history of the minor, the circumstances of the offense, the advantages of treatment within the juvenile justice system, including whether there are facilities or programs available, and whether the public's security mandates sentencing under criminal laws. *Id.* § 5-805(3)(b)(i)-(v). In considering the history of the minor, the court shall consider if the minor has any previous delinquent or criminal history, if the minor has a history of abuse or neglect, and the minor's mental health, physical, or educational history. *Id.* § 5-805(3)(b)(ii)(A)-(C). In considering the circumstances of the offense, the court shall consider the seriousness of the offense, if the minor is charged through accountability, if there is evidence that the offense was committed in an aggressive and premeditated manner, if there is evidence that the offense caused serious bodily harm, and if there is evidence that the minor possessed a deadly weapon. *Id.* § 5-805(3)(b)(iii)(A)-(E). In considering whether the public's security requires a criminal sentence, the court shall consider the minor's history of services to include the minor's willingness to meaningfully participate in available services, if there is a reasonable likelihood that the minor could be rehabilitated before the juvenile court's jurisdiction expired, and the adequacy of any punishment or services. *Id.* § 5-805(3)(b)(v)(A)-(C). Finally, the juvenile court must "give greater weight to the seriousness of the alleged offense and the minor's prior record of delinquency than to the other factors listed in this subsection." *Id.* § 5-805(3).

13

¶ 39 The State may also ask the juvenile court to designate a case as an Extended Jurisdiction Juvenile Prosecution pursuant to section 5-810 of the Act (705 ILCS 405/5-810 (West 2012)). The purpose of designating a case as an extended jurisdiction juvenile prosecution "is to provide additional deterrence by subjecting the minor, if found guilty, to both a juvenile sentence and a conditional adult sentence[;] *** [t]he adult sentence is conditional because it is stayed on the condition that the minor does not violate the provisions of [the] juvenile sentence." *In re Dionte J.*, 2013 IL App (1st) 110700, ¶ 83 (citing *In re Omar M.*, 2012 IL App (1st) 100866, ¶ 24; 705 ILCS 405/5-810(4) (West 2010)).

¶ 40 The Act also provides an age limit to the court's involvement in a case. The Act defines a minor as "a person under the age of 21 years." 705 ILCS 405/5-105(10) (West 2016). Thus, upon reaching the age of 21, the juvenile court no longer has statutory authority to proceed against the defendant in juvenile court. *People v. Foxx*, 2018 IL App (1st) 162345, ¶ 45 (citing *People v. Fiveash*, 2015 IL 117669, ¶ 33).

¶ 41 At the time the statute was amended and made retroactive, the defendant was 20 years of age. The defendant turned 21 in June 2016. Between January 1, 2016, and the date of the defendant's twenty-first birthday in June 2016, neither the State nor the defendant's attorney filed pleadings designed to send his case back to the juvenile court or to designate the case as an extended jurisdiction proceeding.

¶ 42 The defendant argues that as of January 1, 2016, his case belonged in juvenile court because the Act prohibited prosecution of the defendant in criminal court. Further, after he turned 21 in June 2016, five months after the Act was amended, he was no longer subject to the Juvenile Court Act or entitled to its benefits, including sentencing.

14

¶ 43    On appeal, reviewing the question of retroactive application of a statutory amendment to a specific case requires *de novo* review. *People v. Rich*, 2011 IL App (2d) 101237, ¶ 8; *People v. Dalton*, 406 Ill. App. 3d 158, 163 (2010).

¶ 44    The case was ultimately transferred back to juvenile court on August 7, 2017—an outcome that the defendant desired. However, because the defendant was 22 years old when the court transferred the case to juvenile court, the juvenile court had no statutory authority over the defendant and this case. See *In re Jaime P.*, 223 Ill. 2d 526, 540 (2006). The Act limits the court to cases with individuals who are under the age of 21. 705 ILCS 405/5-105(10) (West 2016). When a court exercises its statutory Juvenile Court Act authority over a minor, the court "is not free to reject or expand its statutory authority despite the desirability or need for such action." *In re Ardedia L.*, 249 Ill. App. 3d 35, 40 (1993). While we conclude that the trial court did not have the statutory authority to "transfer" the case back to juvenile court, our analysis does not end here.

¶ 45    The defendant claims that his case should have been transferred to juvenile court effective January 1, 2016. Section 4 of the Statute on Statutes (5 ILCS 70/4 (West 2016)) seemingly would lead to a conclusion that the amendment was retroactive in that section 4 "is a general savings clause, which [the Illinois Supreme Court] has interpreted as meaning that procedural changes to statutes will be applied retroactively, while substantive changes are prospective only." *Howard*, 2016 IL 120729, ¶ 20 (citing *People v. Glisson*, 202 Ill. 2d 499, 506-07 (2002)). Although the triggering date was ultimately the date that the legislation became effective—January 1, 2016, the Illinois Supreme Court did not confirm the amendment's retroactivity until December 1, 2016, when the court filed its opinion in *People ex rel. Alvarez v. Howard*, 2016 IL 120729, ¶ 28. The result was that automatic adult prosecution for first degree murder no longer applied to murders committed when the juvenile was 15. *Id.* The amendment "raised the age of excluded jurisdiction

15

from 15 to 16 years old." *People v. Clark*, 2020 IL App (1st) 182533, ¶ 67 (citing Pub. Act 99-258 (eff. Jan. 1, 2016)). The supreme court noted that the question of " '[w]hether a defendant is tried in juvenile or criminal court is purely a matter of procedure.' " *Howard*, 2016 IL 120729, ¶ 28 (quoting *People v. Patterson*, 2014 IL 115102, ¶ 104).

¶ 46     Thus, to the extent that the defendant construes this authority and the applicable transfer as being jurisdictional, he is incorrect. "Whether a person is to be tried in juvenile or criminal court is procedural rather than jurisdictional [because] [t]he juvenile court is merely a division of the circuit court system, and it is the circuit court that is vested with jurisdiction over all criminal defendants." *People v. Arnold*, 323 Ill. App. 3d 102, 108 (2001) (citing *People v. Green*, 104 Ill. App. 3d 278, 281 (1982); *People v. Nichols*, 60 Ill. App. 3d 919, 922 (1978)). Moreover, "access to juvenile courts is not a constitutional right." *Patterson*, 2014 IL 115102, ¶ 104.

¶ 47     Here, the only aspect of this case that could have been subject to a transfer to juvenile court was sentencing. At the time that the defendant entered his guilty plea in 2012, he was appropriately in criminal court. When an amended statute has retroactive application, "only proceedings taking place after the enactment of the new rule must conform to it, as far as practicable." *Clark*, 2020 IL App (1st) 182533, ¶ 71 (citing *People v. Easton*, 2018 IL 122187, ¶ 21). The guilty plea and the eventual sentencing were separate proceedings. *Id.* ¶ 70 (quoting *People v. Price*, 2018 IL App (1st) 161202, ¶ 20, quoting *People v. Vara*, 2018 IL 121823, ¶ 21). The distinction between trial, or in this case a guilty plea, and sentencing is recognized in the excluded jurisdiction section of the Act. See 705 ILCS 405/5-130(1)(c)(ii) (West Supp. 2015).

¶ 48     As the defendant was no longer under the authority of the Juvenile Court Act when his attorney filed the motion to transfer his case to juvenile court for sentencing, the question that we must resolve is the appropriate remedy. We find guidance in the supreme court's decision in *People*

16

*v. Hunter*, 2017 IL 121306, although it is factually different than this case. In *Hunter*, the defendant was both convicted and sentenced before the January 1, 2016, statutory amendment. *Id.* ¶¶ 30, 32. The supreme court concluded that a transfer to juvenile court was not feasible because the defendant was then 22 and no longer subject to the statutory authority of the juvenile court. *Id.* ¶¶ 26, 27. The supreme court explained that it had "an obligation to construe statutes in a manner that will avoid absurd, unreasonable, or unjust results that the legislature could not have intended" and that " 'the process of statutory construction should not be divorced from consideration of real-world results.' " *Id.* ¶ 28 (quoting *People v. Fort*, 2017 IL 118966, ¶ 46).

¶ 49  We affirm the trial court's sentence in this case because the defendant's requested relief—reversal of his conviction based upon the construction of the amended statute—would result in "absurd, unreasonable, or unjust results that the legislature could not have intended." *Id.*

¶ 50  In this case, neither the defendant nor the State raised his age as an issue before he turned 21 years old. Even so, the immediate actions taken by the trial court in this case reflect a consideration of the same factors that the court would have considered if the defendant or the State raised this concern between January 1, 2016, the effective date of the amendment, and June 2016, the defendant's twenty-first birthday. After reviewing the record on appeal, we conclude that there is no reasonable probability of a different outcome based upon the distinct facts of this case. When the defendant's attorney raised the issue of the legislative amendment, the trial court immediately transferred the case from criminal court to juvenile court even though the defendant was then 22 years old. Thereafter, the State filed a petition for discretionary transfer which the trial court ultimately granted, thus transferring the case back to criminal court.

¶ 51  At the discretionary hearing, and in the trial court's subsequent hearing granting the State's petition for a discretionary transfer, the court indicated that it had considered all matters included

17

within section 5-805(3) of the Act in its consideration of whether the court should allow prosecution under the criminal laws. 705 ILCS 405/5-805(3) (West 2016).

¶ 52    The trial court stated that it considered the defendant's age of 15 when the crime was committed and that he had a delinquent history including a felony burglary charge that would now be considered a misdemeanor retail theft charge, a criminal damage to property charge (Class IV felony), and a misdemeanor retail theft charge. The court indicated that it also considered the fact that there was no testimony that the defendant suffered any kind of physical abuse, but that his attorney presented testimony about the defendant's exposure to domestic violence directed at his mother. With respect to the defendant's mental health, the court considered that the defendant had no relationship with his father, that a brother with whom the defendant was close committed suicide in April 2010, and that the defendant mentally suffered after his brother's death. The court also considered the defendant's mental health records after his arrest. See *id.* § 5-805(3)(b)(i), (ii).

¶ 53    The trial court stated that it considered the seriousness of the offense committed. The court noted that because of plea negotiations, the defendant pled guilty to having caused the death of Charles Ellis without lawful justification and while committing an attempted armed robbery, a forcible felony. The defendant had agreed to cooperate with law enforcement in the prosecution of the codefendants as part of his plea agreement. The court found that the evidence demonstrated the defendant's plan to participate in a robbery with the codefendants. In the defendant's PSI, he admitted that he possessed a deadly weapon, a gun, when this offense was committed. See *id.* § 5-805(3)(b)(iii).

¶ 54    The trial court stated that it had considered the security of the public. The trial court found that because the defendant was then 22 years old, any advantages of treatment within the juvenile justice system did not exist. The court found that the defendant had continued to test positive for

18

marijuana throughout his juvenile supervision and was referred to outpatient counseling and programs to address his drug usage. However, the defendant failed to be compliant with treatment at first, but eventually completed a program in Carbondale with the Gateway Treatment Foundation. The court found that there was no chance to work on rehabilitation before the expiration of the juvenile court's handling of the case because the defendant was 22 years old. See *id.* § 5-805(3)(b)(iv), (v).

¶ 55 The court noted that it had considered all sentencing options available including those options available with extended juvenile jurisdiction. The court considered the adequacy of all available punishments and services. Finally, the court stated that it had given greater weight to the seriousness of the alleged offense and the defendant's prior record of delinquency. See *id.* § 5-805(3). The court concluded that the defendant's case must be transferred to adult criminal court "considering the seriousness of the offense."

¶ 56 After the defendant made his untimely request to have this case transferred to juvenile court, the court transferred the case as requested. The State sought a discretionary transfer back to criminal court, and the court held a lengthy hearing on the State's petition. As detailed in this order, the trial court considered and weighed all statutory matters included in the discretionary transfer section of section 5-805(3) of the Act: the defendant's background and mental health history, prior rehabilitation attempts pursuant to the Act, the seriousness of the offense, and the adequacy of punishment and services available pursuant to the Act. After consideration of all statutory discretionary transfer matters, the trial court concluded that the seriousness of the defendant's offense warranted transfer. We are reminded that at the time that the defendant committed this crime, he was on probation. He participated in the planned robbery. He armed himself with a .380 handgun. He was in the taxi driven by Ellis and directed Ellis to stop at a predetermined location

19

in Mt. Vernon where two of the defendant's codefendants were waiting. When Ellis attempted to flee the scene, the defendant shot his gun at Ellis's vehicle. As argued by the State, we concur that because the defendant pointed and shot his gun at Ellis during the armed robbery, he intended to kill Ellis.

¶ 57　　Moreover, the facts were the same in January 2016 when the amendment became effective, on June 5, 2016, when the defendant turned 21, and on August 4, 2017, when the defendant's attorney filed a motion to transfer the case from criminal court to juvenile court. If the trial court committed procedural error by transferring the defendant's case to juvenile court and conducting a discretionary transfer hearing when the defendant was 22 and no longer subject to the Act, that error was harmless. Error that is not constitutional error can be construed as harmless "if there is no reasonable probability that it affected the outcome." See *People v. Gibson*, 2018 IL App (1st) 162177, ¶ 110.

¶ 58　　This case factually differs from cases cited by the defendant where there was evidence that the State purposefully waited until the defendant had aged out of the juvenile system before bringing the case against him. See *Rich*, 2011 IL App (2d) 101237 (where the State filed a criminal petition against the defendant when he was 20 years old and subject to the Act, but did not pursue that petition, and instead relied upon an identical superseding indictment filed after the defendant turned 21, the criminal charges were dismissed both because the defendant was under the age of 13 when he committed the acts and because an adult defendant could not be charged in criminal court for offenses committed before the age of 15); see also *Fiveash*, 2015 IL 117669 (where the supreme court upheld the appellate court's order that the exclusive jurisdiction provision of the Act did not bar criminal prosecution of the defendant who was 14 and 15 when he committed

20

criminal sexual assault and aggravated criminal sexual assault but was not charged until he was 23 years old).

¶ 59     Here, the State charged the defendant with murder in 2011, almost immediately after the crime was committed. The defendant was originally charged in criminal court. As of January 1, 2016, the defendant was five months from turning 21, after which he could no longer have under the authority of the Juvenile Court Act. We conclude that there is no reasonable probability the outcome would have been different if the court had been presented with a request to transfer the defendant's case back to juvenile court during those five months before he turned 21. Our conclusion is supported by the seriousness of the murder charge and the statutory factors that the trial court considered. Accordingly, we find that any procedural error was harmless, and we affirm the trial court's sentence.

¶ 60                                 B. Ineffective Assistance of Counsel

¶ 61     Defendant next claims that his appointed counsel was ineffective for not seeking retroactive application of the legislative amendment before the defendant turned 21. Claims of ineffective assistance can present a mixed legal and factual question. *Strickland v. Washington*, 466 U.S. 668, 698 (1984). The ultimate question of whether the defendant was deprived of the ineffective assistance of counsel presents a legal matter and is reviewed *de novo*. *People v. Hale*, 2013 IL 113140, ¶ 15.

¶ 62     Constitutionally competent assistance is measured by a test of whether the defendant received "reasonably effective assistance." *Strickland*, 466 U.S. at 687. We presume that defense attorneys pursue sound trial strategies. See *id*. at 689. Trial strategies are unsound only when no reasonably effective criminal defense attorney, facing similar circumstances, would pursue such strategies. *People v. Faulkner*, 292 Ill. App. 3d 391, 394 (1997).

21

¶ 63    To prevail on an ineffective-assistance-of-counsel claim, "[the] defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v. Lefler*, 294 Ill. App. 3d 305, 311 (1998) (citing *Strickland*, 466 U.S. at 694). The term "reasonable probability" has been defined to mean "a probability sufficient to undermine confidence in trial's outcome." *Id.* at 311-12 (citing *Strickland*, 466 U.S. at 687). The fact that professional errors have been committed does not define the question. We must examine the issue from the perspective of whether the defendant received a fair trial, despite an attorney's shortcomings. *Id.* at 312. In that context, a fair trial means "a trial resulting in a verdict worthy of confidence." *Id.* (citing *People v. Moore*, 279 Ill. App. 3d 152 (1996)).

¶ 64    In this case, the defendant claims that his appointed counsel was ineffective because he did not seek retroactive application of the amendment raising the minimum age for automatic transfer to criminal court from 15 to 16 years before the defendant turned 21. The defendant entered a valid guilty plea in this case prior to the January 1, 2016, statutory amendment. He had not yet been sentenced and was 20 years of age on January 1, 2016.

¶ 65    We do not determine whether the defendant's attorney was ineffective for failing to seek retroactive application of the amendment, because the defendant is unable to satisfy the prejudice prong of the *Strickland* standard—that the outcome of the case would have been different. *Strickland*, 466 U.S. at 696. Earlier in this order, we concluded that there existed no reasonable probability that the trial court would have denied the State's petition for a discretionary transfer if the petition had been filed when the defendant was 20 years old. Although the age for a presumptive transfer to criminal court increased from 15 to 16 with the legislative amendment, the State's ability to seek a discretionary transfer remained available. 705 ILCS 405/5-805(3)(a) (West

22

Supp. 2015). The discretionary transfer factors weighed heavily in favor of transfer regardless of the defendant's age. The severity of the crime, the fact that the defendant helped to plan the armed robbery, the fact that the defendant participated in the armed robbery with a handgun, and the fact that the defendant shot his handgun at the victim, all supported a discretionary transfer. Accordingly, we are not able to find that the outcome of the case would have been different if the defendant's appointed counsel had filed a request for transfer to juvenile court when he was 20 years old. *Strickland*, 466 U.S. at 696.

¶ 66                      C. Disqualification of Trial Court Judge

¶ 67    Finally, the defendant argues that the trial court judge, Judge Johannah B. Weber, should have disqualified herself in this matter. Before she began her judicial career, Ms. Weber was the Deputy Defender for the Office of the State Appellate Defender, Fifth Judicial District. In that capacity, she entered her appearance as counsel for the defendant. The appearance was filed by Ms. Weber in the State's interlocutory appeal of the trial court's suppression of the defendant's statements to police. We take judicial notice of Ms. Weber's April 2, 2012, entry of appearance in this court on the defendant's behalf. *People v. Jackson*, 182 Ill. 2d 30, 66 (1998) (stating that a court can take judicial notice of its own records).

¶ 68    In this case, Judge Weber presided over some of the hearings in this case. Most importantly, she issued orders including the order immediately transferring the defendant's case to juvenile court and the order granting the State's petition for a discretionary transfer back to criminal court. Judge Weber was the sentencing judge in this case and denied the defendant's motion to reconsider his sentence.

¶ 69    The defendant argues that Judge Weber should have recused herself *sua sponte*. *People v. Austin*, 116 Ill. App. 3d 95, 99-102 (1983) (where the appellate court granted the defendant a new

23

probation revocation hearing after holding that a trial judge erred by not *sua sponte* recusing himself from the hearing when the judge previously represented the defendant at the preliminary hearing on the charges that formed the basis for the probation revocation); *People v. Vasquez*, 307 Ill. App. 3d 670, 673-74 (1999) (holding that a trial judge should have been disqualified from hearing the defendant's postconviction petition because the judge had been a prosecutor in the original prosecution of the defendant in the same case).

¶ 70    Illinois Supreme Court Rule 63(C)(1) provides, "A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where *** the judge served as a lawyer in the matter in controversy ***." Ill. S. Ct. R. 63(C)(1) (eff. Feb. 2, 2017).

¶ 71    The judicial disqualification decision is inherently individualized and cannot be utilized by a party or his or her attorney, as explained by the Illinois Supreme Court in *In re Marriage of O'Brien*:

> "Whether a judge should recuse himself is a decision in Illinois that rests *exclusively within the determination of the individual judge*, pursuant to the canons of judicial ethics found in the Judicial Code. All judges in Illinois are expected to consider, *sua sponte*, whether recusal is warranted as a matter of ethics under the Judicial Code. The Judicial Code, which is a part of our rules, says nothing that would give the impression that its provisions could be used by a party or his lawyer as a means to force a judge to recuse himself, once the judge does not do so on his own. This point is, in fact, reinforced by the Preamble to the Judicial Code: the Judicial Code is 'designed to provide guidance to judges *** and to provide a structure for regulating conduct through disciplinary agencies,' and its purpose 'would be subverted if the Code were invoked by lawyers for mere tactical advantage.' " (Emphasis in original.) *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 45 (quoting Code of Judicial Conduct, Preamble).

¶ 72    The defendant acknowledges that he did not properly preserve this issue for appellate review and asks this court to consider the matter pursuant to the plain error doctrine. *People v. Thompson*, 238 Ill. 2d 598, 613 (2010). We decline to do so in this case.

¶ 73 A judge is required to disqualify herself in a case where her impartiality could reasonably be questioned. Ill. S. Ct. R. 63(C)(1) (eff. Feb. 2, 2017). A judge should recuse herself if she "served as a lawyer in the matter in controversy." Ill. S. Ct. R. 63(C)(1) (eff. Feb. 2, 2017). In this case, the record on appeal is silent about whether Judge Weber was aware that she had entered her appearance in this court on the defendant's behalf. When a defendant knows or has a reason to know that the judge in his case represented him in the same case many years prior, and the defendant takes no steps to raise the issue or attempt to develop the claim before participating in the proceeding with the judge, and then raises the issue for the first time on appeal, the claim "is waived for purposes of appeal. *Federal Deposit Insurance Corp. v. O'Malley*, 163 Ill. 2d 130, 140 (1994); *People v. Mitchell*, 76 Ill. App. 3d 878, 879-80 (1979).

¶ 74 We note that Ms. Weber's entry of appearance on behalf of the office of the Deputy Defender does not suggest any sort of active involvement in the defendant's case. The State's interlocutory appeal was very short-lived. Furthermore, the entry of appearance was something that the defendant should have known or could have been discovered while this case was pending in the trial court. The defendant filed no motion on this matter. Further, there were no facts alleged or developed of any perceived conflict or partiality. Accordingly, we find that the issue is waived. *O'Malley*, 163 Ill. 2d at 140.

¶ 75                                       III. CONCLUSION

¶ 76 For the reasons stated in this order, we affirm the judgment of the Jefferson County circuit court.


¶ 77 Affirmed.


25