# Illinois Official Reports

## Supreme Court

---

### *People ex rel. Alvarez v. Howard*, 2016 IL 120729

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS *ex rel*. ANITA ALVAREZ, Petitioner, v. HONORABLE CAROL M. HOWARD *et al.*, Respondents. |
| Docket No. | 120729 |
| Filed | December 1, 2016 |
| Decision Under Review | Original action for *mandamus*. |
| Judgment | Writ denied. |
| Counsel on Appeal | Anita Alvarez, State's Attorney, of Chicago (Alan J. Spellberg and Noah Montague, Assistant State's Attorneys, of counsel), for petitioner. |
| | Lisa Madigan, of Springfield (Carolyn E. Shapiro, Solicitor General, and Michael M. Glick and Gopi Kashyap, Assistant Attorneys General, of Chicago, of counsel), for respondent. |
| | Frank A. Tedesso, of Chicago, for respondent Luis Montano. |
| Justices | JUSTICE THOMAS delivered the judgment of the court, with opinion. |
| | Chief Justice Karmeier and Justices Freeman, Kilbride, Garman, Burke, and Theis concurred in the judgment and opinion. |

**OPINION**

¶ 1 Petitioner, Anita Alvarez, State's Attorney of Cook County, seeks a writ of *mandamus* or prohibition against respondent, the Honorable Carol M. Howard, judge of the circuit court of Cook County. See Ill. Const. 1970, art. VI, § 4(a). Following a statutory amendment that raised the automatic transfer age for juveniles, defendant, Luis Montano, moved to send his pending criminal case to juvenile court for a discretionary transfer hearing. Respondent granted the motion. The State now seeks a writ of *mandamus* or prohibition directing respondent to rescind her order. We hold that respondent's order was in conformance with the law, and we therefore decline to award the State a writ of *mandamus* or prohibition.

¶ 2                                              BACKGROUND

¶ 3 On June 13, 2013, a grand jury indicted defendant, Luis Montano, for 29 counts of first degree murder, arising out of the shooting death of Eugenio Solano, and 4 counts of attempted murder and 1 count of aggravated battery, arising out of the shooting of Raul Maza. The offenses were alleged to have occurred on March 29, 2013.

¶ 4 Defendant was born on September 4, 1997, and was 15 years old at the time of the offenses. The charges against defendant were brought in criminal court, pursuant to the version of section 5-130 of the Juvenile Court Act in effect at the time:

"§ 5-130. Excluded jurisdiction.

(1)(a) The definition of delinquent minor under Section 5-120 of this Article shall not apply to any minor who at the time of an offense was at least 15 years of age and who is charged with: (i) first degree murder, (ii) aggravated criminal sexual assault, (iii) aggravated battery with a firearm as described in Section 12-4.2 or subdivision (e)(1), (e)(2), (e)(3), or (e)(4) of Section 12-3.05 where the minor personally discharged a firearm as defined in Section 2-15.5 of the Criminal Code of 1961 or the Criminal Code of 2012, (iv) armed robbery when the armed robbery was committed with a firearm, or (v) aggravated vehicular hijacking when the hijacking was committed with a firearm.

These charges and all other charges arising out of the same incident shall be prosecuted under the criminal laws of this State." 705 ILCS 405/5-130 (West 2014).

¶ 5 While the charges against defendant were pending in criminal court, the legislature amended section 5-130(1)(a). Public Act 99-258 was approved by the Governor on August 4, 2015, and went into effect on January 1, 2016. Pub. Act 99-258 (eff. Jan. 1, 2016). Among the changes that Public Act 99-258 made was to raise the age for automatic adult prosecution for the enumerated offenses from 15 to 16 and to reduce the number of offenses that qualify for automatic transfer by eliminating subsections (iv) and (v). On February 8, 2016, defendant filed a "Motion to Transfer to Juvenile Court for Transfer Hearing," alleging that the recent amendment removed criminal court jurisdiction over the case because defendant had been 15 years old when the offenses occurred. Defendant argued that the change to the statute was a purely procedural one that should be applied retroactively to pending cases and that the legislature had not included a savings clause preserving criminal jurisdiction over pending cases.

¶ 6    The State filed a response, arguing that because the implementation of Public Act 99-258 was delayed until January 1, 2016, it is presumed to have a prospective effect. The State based its argument on the approach set forth by the United States Supreme Court in *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), and adopted by this court in *Commonwealth Edison Co. v. Will County Collector*, 196 Ill. 2d 27 (2001). According to the State, the legislature indicated the temporal reach of the statute by delaying its implementation date, and therefore it cannot be applied retroactively.

¶ 7    Following a hearing, respondent granted defendant's motion and transferred the cause to juvenile court. The court noted that the legislature had not included a savings clause for the amendment to section 5-130, which was significant because the legislature had included savings clauses for other provisions of the Juvenile Court Act amended by the same public act. For example, an amendment to the discretionary transfer section of the Juvenile Court Act of 1987 (705 ILCS 405/5-805 (West 2014)) provided that "[t]he changes made to this Section by this amendatory Act of the 99th General Assembly apply to a minor who has been taken into custody on or after the effective date of this amendatory Act of the 99th General Assembly." Pub. Act 99-258 (eff. Jan. 1, 2016). The court further noted that the General Assembly had provided a savings clause for previous amendments to section 5-130 (see Pub. Act 94-574 (eff. Aug. 12, 2005); Pub. Act 98-61 (eff. Jan. 1, 2014)) and that this court had relied on another savings clause in Public Act 98-61 to hold that an amendment to section 5-120 of the Juvenile Court Act (705 ILCS 405/5-120 (West 2014)) was prospective only. See *People v. Richardson*, 2015 IL 118255. The court then applied the *Landgraf* test for retroactivity and determined that the amendment to section 5-130 applies to pending cases. The court explained that, because the legislature had not indicated the temporal reach of the amendment, the temporal reach was determined by reference to section 4 of the Statute on Statutes. See 5 ILCS 70/4 (West 2014). Section 4 has been interpreted to mean that substantive amendments are prospective only, while procedural ones are retroactive. See *People v. Glisson*, 202 Ill. 2d 499, 507 (2002). The court noted that this court held in *People v. Patterson*, 2014 IL 115102, that the juvenile transfer statute is purely procedural. Therefore, the amendment to section 5-130 was a procedural one that would apply retroactively. The court concluded that it no longer had jurisdiction over the case and ordered it transferred to juvenile court.

¶ 8    The State then moved to reconsider. The State first argued that respondent erred in finding that the court had lost jurisdiction over the case. The State pointed out that, pursuant to the Illinois Constitution, the circuit courts have original jurisdiction over all justiciable matters, except where the supreme court is vested with original jurisdiction. Ill. Const. 1970, art. VI, § 9. Thus, whether a person is tried in juvenile or criminal court is a matter of procedure rather than jurisdiction. See *People v. P.H.*, 145 Ill. 2d 209, 222 (1991). The State further argued that the court erred in ruling that the absence of a savings clause is indicative of legislative intent and that the amendment's delayed implementation date meant that it was to be applied prospectively only. Finally, the State contended that, although the statutory amendment was procedural, it could not be applied retroactively because it would have a "retroactive impact."

¶ 9    Respondent denied the State's motion but entered an order clarifying her previous order. Respondent agreed with the State that the circuit court is a unified court of jurisdiction. However, respondent explained that, by enacting the Juvenile Court Act, the legislature had exercised its power to change the law that governs which division of the circuit court has administrative responsibility for cases involving juveniles accused of violating the law. The

court ruled that, for the reasons given in its previous order, the amendment applied retroactively and therefore defendant's case belonged in juvenile court. Respondent transferred the case to juvenile court and explained that the State could then move the juvenile court to exercise its discretion to transfer the case back to criminal court.

¶ 10    The State then moved in this court for leave to file an original action for a writ of *mandamus* or prohibition, arguing that respondent's order transferring the case was without legal basis or authority. The State requested a writ of *mandamus* or prohibition directing respondent to rescind her transfer order. The State further asked that, if all of the normal requirements for *mandamus* or prohibition had not been met, then this court should address the issue under its supervisory authority. This court granted the State leave to file its petition.

¶ 11                                    ANALYSIS

¶ 12    This court has discretionary original jurisdiction to hear *mandamus* cases. Ill. Const. 1970, art. VI, § 4(a). *Mandamus* is an extraordinary remedy used to compel a public official to perform a purely ministerial duty where no exercise of discretion is involved. *People ex rel. Birkett v. Konetski*, 233 Ill. 2d 185, 192-93 (2009). A writ of *mandamus* will be awarded only if the petitioner establishes a clear right to the relief requested, a clear duty of the public official to act, and clear authority in the public official to comply with the writ. Although *mandamus* generally provides affirmative rather than prohibitory relief, the writ can be used to compel the undoing of an act. *Id.* at 193.

¶ 13    A writ of prohibition may be used to " 'prevent a judge from acting where he has no jurisdiction to act or to prevent a judicial act [that] is beyond the scope of a judge's legitimate jurisdictional authority.' " *People ex rel. Foreman v. Nash*, 118 Ill. 2d 90, 97 (1987) (quoting *Daley v. Hett*, 113 Ill. 2d 75, 80 (1986)). Four requirements must be met for a writ of prohibition to be issued: (1) the action to be prohibited must be judicial or quasi-judicial, (2) the writ must be issued against a court of inferior jurisdiction, (3) the action to be prohibited must be outside either the inferior court's jurisdiction or its legitimate authority, and (4) the petitioner must lack any other adequate remedy. *People ex rel. Devine v. Stralka*, 226 Ill. 2d 445, 450 (2007).

¶ 14    Before addressing the merits of the State's argument, we address respondent's argument that the State may not seek *mandamus* or prohibition because it had a right to appeal the order transferring the case to juvenile court. Respondent notes that original actions for *mandamus* or prohibition may not be used to circumvent the normal appellate process. See *Zaabel v. Konetski*, 209 Ill. 2d 127, 132 (2004); *Nash*, 118 Ill. 2d at 97. According to respondent, the trial court's order transferring the case to juvenile court was appealable by the State under Illinois Supreme Court Rule 604(a)(1) (eff. Mar. 8, 2016) because it had the substantive effect of dismissing the indictments against defendant. Thus, because the State failed to avail itself of this avenue of relief, it cannot now seek *mandamus* or prohibition. We disagree.

¶ 15    Pursuant to Rule 604(a), the State may appeal any order that has the substantive effect of dismissing a charge, and the dismissal does not have to be on one of the grounds listed in section 114-1 of the Code of Criminal Procedure of 1963 (725 ILCS 5/114-1 (West 2014)). *People v. Love*, 39 Ill. 2d 436, 439-40 (1968). Thus, the relevant question here is whether the trial court's transfer order had the substantive effect of dismissing the charges against defendant. The specific relief defendant requested was to have his case sent to juvenile court

for a discretionary transfer hearing. The order that respondent entered transferred the case to juvenile court for further proceedings. When a court transfers a case between juvenile and criminal courts, the only question being decided is which forum will determine whether the defendant is guilty of the crimes charged. *People v. Taylor*, 76 Ill. 2d 289, 302 (1979). Here, rather than dismiss the charges against defendant, the substantive effect of the court's order was potentially to change the forum that will adjudicate the charges against him.

¶ 16 Moreover, even when a court's order *actually* dismisses a charge against a defendant, this court has held that the order is not appealable where the court's order specifically contemplates further action. Thus, in *People v. Heddins*, 66 Ill. 2d 404, 406 (1977), this court held that an order dismissing an indictment was not appealable under Rule 604(a)(1) when the order specifically held defendant to bail pending further proceedings in the cause. Similarly, in *People v. Scholin*, 62 Ill. 2d 372, 373 (1975), this court held that a dismissal order was not appealable under Rule 604(a) where the order held defendant to bail and granted the State five days to file an amended information. Here, the court's order clearly contemplated further proceedings in the cause. The order merely transferred the case to another forum, and defendant anticipated that once the cause was in juvenile court, the State would move for a discretionary transfer back to criminal court. Defendant's motion even asked the court to send the case to juvenile court for a discretionary transfer hearing.

¶ 17 Admittedly, this court has held that an order denying a motion for a discretionary transfer from juvenile court to criminal court *is* appealable by the State. *People v. Martin*, 67 Ill. 2d 462 (1977). Nevertheless, the concerns that caused us to hold that such orders are appealable are not present in this situation. In *Martin*, we held that an order denying a transfer from juvenile court to criminal court was appealable because "the substantive effect of the trial court's action *** was the dismissal of *any future indictment*" on the charge. (Emphasis added.) *Id.* at 465. We further noted that an order *granting* a transfer from juvenile court to criminal court was appealable by the juvenile upon conviction (*id.* at 465-66) and explained that an order denying such a motion "ought not to be totally immunized from review" (*id.* at 466). Here, unlike in *Martin*, the effect of the trial court's order was not the dismissal of any future indictment in criminal court. In fact, both sides anticipate that the State will move for a discretionary transfer back to criminal court. If the State loses that motion, the order would be appealable under *Martin*. Thus, we reject respondent's argument that the State could have appealed the trial court's transfer order, and therefore there is no procedural impediment to the State seeking a writ of *mandamus* or prohibition.

¶ 18 We turn now to the merits of the State's argument. The State contends that respondent's order transferring the case to juvenile court was not authorized by law because the statutory amendment changing the automatic transfer age from 15 to 16 applies prospectively only. Respondent and defendant disagree, contending that a straightforward application of this court's retroactivity jurisprudence shows that the amendment applies retroactively to pending cases. The parties generally agree as to the governing principles, but they disagree over how they should be applied to this particular statutory amendment.

¶ 19 In *Commonwealth Edison*, 196 Ill. 2d at 36-39, this court adopted the United States Supreme Court's retroactivity analysis set forth in *Landgraf*, 511 U.S. 244. Under this two-part approach, the first question is whether the legislature has clearly indicated the temporal reach of the amended statute. *Commonwealth Edison*, 196 Ill. 2d at 38. If so, then that expression of

legislative intent must be given effect, absent a constitutional prohibition. *Id.* If not, then the court proceeds to step two and determines whether the statute would have a retroactive impact. A statute has a retroactive impact if it " 'would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.' " *Id.* (quoting *Landgraf*, 511 U.S. at 280). If there is no retroactive impact, the statutory amendment may be applied retroactively; if there is a retroactive impact, the court presumes that the legislature intended the amendment to be prospective only. *Id.*

¶ 20     We later clarified, however, that because of the existence of section 4 of the Statute on Statutes (5 ILCS 70/4 (West 2014)), application of the *Landgraf* test in Illinois would "prove uneventful." *Caveney v. Bower*, 207 Ill. 2d 82, 92 (2003). Section 4 is a general savings clause, which this court has interpreted as meaning that procedural changes to statutes will be applied retroactively, while substantive changes are prospective only. *Glisson*, 202 Ill. 2d at 506-07. Thus, as this court explained in *Caveney*, an Illinois court will never need to go beyond step one of the *Landgraf* test because the legislature has clearly set forth the temporal reach of every amended statute. *Caveney*, 207 Ill. 2d at 92, 94-95. If the temporal reach of the amendment is not set forth in the statutory amendment itself, then it is provided by default in section 4. *Id.* at 94.

¶ 21     Applying these principles to the facts of this case, we consider first whether the legislature has clearly indicated the temporal reach of the statutory amendment changing the automatic transfer age from 15 to 16. As we noted above, the legislature did not include a savings clause with respect to this statutory change. The legislature did include a savings clause for other portions of Public Act 99-258, but it did not do so with respect to the amendments to section 5-130. Thus, there is nothing in the text of the amendment itself that indicates the statute's temporal reach.

¶ 22     The State, however, claims that the legislature indicated that the temporal reach of the amendment is prospective because the legislature delayed the amendment's implementation date. The amendment was passed by the legislature in May 2015, but it did not become effective until January 1, 2016. This court has held that the delaying of a statute's implementation date can be considered evidence that the legislature intended prospective application. See, *e.g.*, *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 186-88 (2011); *People v. Brown*, 225 Ill. 2d 188, 201 (2007). Those cases, however, were ones in which the legislature *expressly* delayed the implementation of the statute in the text of the statutory amendment. See Pub. Act 94-558 (eff. Jan. 1, 2006) (*General Motors*); Pub. Act 90-590 (eff. Jan. 1, 1999) (*Brown*). By contrast, the amendment at issue here was delayed by operation of section 1(a) of the Effective Date of Laws Act (Effective Date Act) (5 ILCS 75/1(a) (West 2014)), which provides that, "[a] bill passed prior to June 1 of a calendar year that does not provide for an effective date in the terms of the bill shall become effective on January 1 of the following year, or upon its becoming a law, whichever is later."[1] The Effective Date Act

---

[1]The rule for bills passed after May 31 is: "A bill passed after May 31 of a calendar year shall become effective on June 1 of the next calendar year unless the General Assembly by a vote of three-fifths of the members elected to each house provides for an earlier effective date in the terms of the bill or unless the General Assembly provides for a later effective date in the terms of the bill; provided that if the effective date provided in the terms of the bill is prior to the date the bill becomes a

implements the constitutional directive that the General Assembly provide a uniform effective date for laws passed prior to June 1 of a calendar year. See Ill. Const. 1970, art. IV, § 10. The Effective Date Act helps to ensure that parties have sufficient opportunity to conform their conduct to the law (see *Mulligan v. Joliet Regional Port District*, 123 Ill. 2d 303, 315 (1988)), and it "alleviate[s] confusion when the Governor's action on a bill occurs subsequent to the specified effective date contained therein" (*People ex rel. American Federation of State, County & Municipal Employees v. Walker*, 61 Ill. 2d 112, 118 (1975)).

¶ 23    Using the Effective Date Act in the manner the State suggests would be inconsistent with this court's retroactivity jurisprudence, and it would create a conflict between the Effective Date Act and section 4 of the Statute on Statutes. As respondent notes, under *Brown* and *Pappas*, a statute that has an express delayed implementation date but is otherwise silent as to temporal reach will be applied prospectively. Under the State's position, when an amendment is silent as to both temporal reach and effective date, the amendment would *still* be applied prospectively, regardless of whether it is substantive or procedural. Our case law teaches, however, that when a statute is silent as to temporal reach, section 4 of the Statute on Statutes supplies the default rule and procedural changes are applied retroactively. There is no support in this court's jurisprudence for the proposition that the Effective Date Act trumps section 4 of the Statute on Statutes.

¶ 24    The State tries to draw support from *Commonwealth Edison*. In that case, the statutory amendment had a delayed implementation date due to the Effective Date Act. See Pub. Act 88-545 (eff. Jan. 1, 1995). The appellant argued that the delayed implementation meant that the General Assembly intended the amendment to be prospective only. *Commonwealth Edison*, 196 Ill. 2d at 41-42. This court rejected that argument because the legislature specifically said in the text of the amendment that it applied to "all cases pending on or after the effective date of this amendatory Act of 1994." *Id.* at 42. This court explained that specific language as to the statute's temporal reach would trump a general presumption of prospectivity arising from a delayed implementation date. *Id.*

¶ 25    We decline to give this passage in *Commonwealth Edison* the significance that the State reads into it. The court never even mentioned the Effective Date Act. The court merely noted the appellant's argument that delayed implementation dates are evidence that the legislature intended prospective application and then held that any such presumption was irrelevant in the face of specific statutory language indicating retroactive application. There was no need for the court to consider whether an effective date that was delayed by operation of the Effective Date Act would raise the same presumption as one that was expressly delayed, as that presumption did not arise at all in the case. Further, this court has clearly stated that every time a statute has been amended, the legislature will have clearly set forth its temporal reach in one of two places: "*either expressly in the new legislative enactment or by default in section 4 of the Statute on Statutes*." (Emphasis added.) *Doe A. v. Diocese of Dallas*, 234 Ill. 2d 393, 406 (2009); see also *Allegis Realty Investors v. Novak*, 223 Ill. 2d 318, 332 (2006); *Caveney*, 207 Ill. 2d at 95. If the temporal reach is not set forth in the legislative enactment itself, the default is the Statute on Statutes, not the Effective Date Act. The State claims that the Effective Date Act "clearly shows a legislative preference that all of its laws operate prospectively only,

law then the date the bill becomes a law shall be the effective date." 5 ILCS 75/2 (West 2014). See also Ill. Const. 1970, art. IV, § 10.

unless specifically mandated to apply retroactively." The problem with that position is that the legislature specifically enacted section 4 of the Statute on Statutes to provide how it wanted statutory amendments and repeals to be applied, and we must follow the legislature's wishes, unless doing so would interfere with a constitutional right. *Commonwealth Edison*, 196 Ill. 2d at 38. Unlike the Effective Date Act, section 4 speaks directly to the temporal reach of statutory amendments and repeals.

¶ 26 Moreover, in a case in which this court *did* discuss the fact that a procedural statutory amendment had been delayed by the Effective Date Act, the court still held that it applied retroactively. *People v. Bates*, 124 Ill. 2d 81 (1988). In that case, the legislature shortened the time period for filing postconviction petitions from 20 to 10 years. *Id.* at 83-84. Under the Effective Date Act, the amendment did not become effective until six months after its passage. *Id.* at 89. This court noted that statutes of limitation are procedural and that procedural amendments may be applied retroactively. *Id.* at 85. The court explained that the delayed implementation date gave people time to protect interests that may be affected by the amendment. *Id.* at 89. Thus, there is clearly nothing inconsistent with an amendment being applied retroactively even though its implementation is delayed by the Effective Date Act.

¶ 27 Finally, it is clear that the legislature itself does not view the Effective Date Act as determining the temporal reach of statutory amendments. As we noted above, the legislature included savings clauses with respect to some portions of Public Act 99-258 but not with respect to others. This is clear evidence that the legislature intended only some of the amendments to be prospective only. If the State is right that operation of the Effective Date Act renders all of the amendments prospective only, then these savings clauses would have been wholly unnecessary and superfluous. The legislature would never have to include a savings clause for any statutory amendment that lacked an effective date. For all of the above reasons, we do not believe that the Effective Date Act may be used to determine the temporal reach of the statute.

¶ 28 Because the legislature did not set forth the amendment's temporal reach in the amendment itself, we turn to section 4 of the Statute on Statutes. Under section 4, substantive amendments may not be applied retroactively, but "procedural law changes will apply to ongoing proceedings." *People v. Ziobro*, 242 Ill. 2d 34, 46 (2011). Here, both sides agree that the statutory amendment is procedural. This court held in *Patterson*, 2014 IL 115102, ¶ 104, that "[w]hether a defendant is tried in juvenile or criminal court is purely a matter of procedure." Pursuant to section 4, the legislature has clearly indicated that this statutory amendment should apply retroactively. Under the *Landgraf* test, this court will respect the legislature's wishes as to the temporal reach of the statute, unless doing so would offend the constitution. As this court explained in *Commonwealth Edison*, 196 Ill. 2d at 38, "if the legislature has clearly indicated what the temporal reach of an amended statute should be, then, absent a constitutional prohibition, that expression of legislative intent must be given effect." See also *Ziobro*, 242 Ill. 2d at 46; *Allegis Realty Investors*, 223 Ill. 2d at 333-34 ("where as here the legislature clearly intends for a statute to be applied retroactively, *Landgraf* and our decisions applying that case require that we honor the legislature's intention unless doing so would contravene the constitution"). The State does not argue that applying the amendment retroactively would offend the constitution, and when asked about this at oral argument, counsel for the State agreed that he was not aware of any way in which retroactive application would offend the constitution. Counsel for the State denied that this was the relevant test, which is a difficult

position to maintain, given that it is step one of the *Landgraf* approach. Because there is no constitutional impediment to retroactive application, the amendment applies to pending cases.

¶ 29    The State makes several other arguments against retroactive application of the amendment to section 5-130, but none withstand scrutiny. For instance, the State spends a significant portion of its argument discussing step two of the *Landgraf* test. But, as this court has made clear, "in light of section 4 [of the Statute on Statutes], Illinois courts need never go beyond the threshold step of the *Landgraf* test." *Doe A.*, 234 Ill. 2d at 406.

¶ 30    The State further argues that, even if procedural changes are retroactive under Section 4, that section mandates that such changes are applied *to* "*the proceedings thereafter*" and only "so far as practicable." (Emphasis added.) 5 ILCS 70/4 (West 2014). The State notes that defendant's case has been pending in criminal court for three years and that the indictment was properly filed in criminal court under the law that existed at the time. According to the State, section 5-130 was fully complied with when the indictment was filed, and no further proceedings will take place under section 5-130. At oral argument, counsel for the State cited footnote 29 of *Landgraf*, where the court stated:

> "Of course, the mere fact that a new rule is procedural does not mean that it applies to every pending case. A new rule concerning the filing of complaints would not govern an action in which the complaint had already been properly filed under the old regime, and the promulgation of a new rule of evidence would not require an appellate remand for a new trial. Our orders approving amendments to federal procedural rules reflect the commonsense notion that the applicability of such provisions ordinarily depends on the posture of the particular case." *Landgraf*, 511 U.S. at 275 n.29.

The State contended that the Supreme Court's statement about a new rule concerning the filing of complaints is the same situation that we have here. Similarly, the State relies on *Brown*, 225 Ill. 2d at 199-200, for the proposition that the mere existence of a newly enacted provision does not render the former provision invalid, nor does it render actions taken in reliance upon the former provision invalid.

¶ 31    As respondent points out, however, no one is contesting the propriety of anything that has happened so far in this case. The question is whether, given the amendment, defendant should continue to be prosecuted in criminal court. The answer is no, because he is no longer in the class of juveniles who are subject to automatic transfer. We note that the Supreme Court explicitly recognized in *Landgraf* that statutes that simply "change[ ] the tribunal that is to hear the case" are regularly applied to pending cases. (Internal quotation marks omitted.) *Landgraf*, 511 U.S. at 274.

¶ 32    The State further argues that, under section 4, procedural changes are applied retroactively only so far as is practicable and it is not practicable to transfer this case to juvenile court. The State points out that the case has been pending in criminal court for three years and that retroactive application would be so significantly disruptive as to be impracticable. "Practicable," however, is not synonymous with "convenient." Rather, it means "possible to practice or perform **:** capable of being put into practice, done, or accomplished **:** FEASIBLE." Webster's Third New International Dictionary 1780 (1993). See also Black's Law Dictionary 1291 (9th ed. 2009) (defining "practicable" as "reasonably capable of being accomplished; feasible); *People ex rel. Williams v. Errant*, 229 Ill. 56, 66-67 (1907) (defining "practicable" as " 'that which may be done, practiced or accomplished; that which is performable, feasible,

possible' " (quoting *Streeter v. Streeter*, 43 Ill. 155, 165 (1867))). Clearly, transferring this case to juvenile court for a transfer hearing is something that is feasible.

¶ 33 In response to the State's contention that transferring a case that has been pending in criminal court for three years will be disruptive and inconvenient, we would simply note that the legislature had it within its power to make the amendment prospective only. The legislature has given clear instructions as to how it wants its statutes applied, and it is not this court's function to second-guess the legislature's choices. Rather, under the *Landgraf* test, this court will respect the legislature's choice, unless doing so would interfere with a party's constitutional rights. The *Landgraf* test strikes the proper balance between the roles of the legislature and the courts. The State is unable to identify any way in which retroactive application will violate the constitution, and this is fatal to the State's argument.

¶ 34 CONCLUSION

¶ 35 Respondent did not err in transferring defendant's case from criminal court to juvenile court. Under the previous version of section 5-130, defendant's case was automatically transferred to criminal court because he was 15 years old when the crimes occurred. The legislature changed the automatic transfer age from 15 to 16, and this amendment was retroactive under section 4 of the Statute on Statutes. Accordingly, defendant's case belongs in juvenile court, unless and until it is transferred to criminal court pursuant to a discretionary transfer hearing. Because the circuit court's transfer of the case was not even erroneous, let alone outside the court's jurisdiction or its legitimate authority, there is no basis for this court to issue a writ of *mandamus* or prohibition.

¶ 36 Writ denied.