2022 IL App (2d) 200495
No. 2-20-0495
Opinion filed August 9, 2022

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) | |
| v. | ) | No. 16-CF-3032 |
| COLEY DEWAYNE CARWELL, | ) | Honorable Randy Wilt, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUDSON delivered the judgment of the court, with opinion.
Justices Hutchinson and Brennan concurred in the judgment and opinion.

**OPINION**

¶ 1 Defendant, Coley Dewayne Carwell, appeals from the sentence he received after he pled guilty to first-degree murder (720 ILCS 5/9-1(a)(1) (West 2016)) and aggravated battery with a firearm (720 ILCS 5/12-3.05(e)(1) (West 2016)). Defendant, who was under 16 years of age on the date of the offenses, was charged as an adult in criminal court, presumably pursuant to the automatic transfer provision of section 5-130(1)(a) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/5-130(1)(a) (West 2016)). He remained in criminal court for his plea and sentencing. On appeal, defendant argues that he was denied the effective assistance of counsel when his defense counsel, after defendant's guilty plea, unreasonably failed to seek his transfer to juvenile court for sentencing. In response, the State argues that (1) defendant's claim is inconsistent with

his guilty plea and, therefore, he was required to seek withdrawal of his plea before appealing; (2) defendant's guilty plea waived any claim pertaining to the procedural error in automatically transferring defendant's case to criminal court; and (3) defendant has not demonstrated a reasonable probability that, if the case were transferred to juvenile court, the trial court would not discretionarily transfer the case back to criminal court for resentencing. We hold that (1) defendant's claim is not inconsistent with his guilty plea and so his appeal is properly before us, (2) his claim relates to sentencing and so was not waived by his guilty plea, and (3) he need not show prejudice beyond that the trial court was precluded from exercising its discretion as to whether he would be sentenced in criminal court or juvenile court. Therefore, we vacate defendant's sentence and remand with directions for proceedings under the Act.

¶ 2 I. BACKGROUND

¶ 3 On November 21, 2016, a grand jury entered a 22-count indictment against defendant. All charges arose out of an incident on November 11, 2016, in which defendant shot and killed Jamario Crawford and shot and wounded another victim identified as L.B. The indictment's lead charge, in count I, was first-degree murder (720 ILCS 5/9-1(a)(1) (West 2016)), with the specification that defendant was subject to a 25-year-to-life additional sentence because he personally discharged a firearm that proximately caused Crawford's death (730 ILCS 5/5-8-1(d)(iii) (West 2016)). Counts II through XX charged different theories of first-degree murder. Count IV, as originally filed, alleged that defendant committed first-degree murder in that he, "without lawful justification and with intent to kill or do great bodily harm to Jamario Crawford, shot Jamario Crawford thereby causing the death of Jamario Crawford." Count XXI charged defendant with the attempted murder of L.B. (720 ILCS 5/8-4, 9-1 (West 2016)). Count XXII charged him with aggravated battery with a firearm against L.B. (720 ILCS 5/12-3.05(e)(1) (West 2016)). The indictment listed defendant's

date of birth as November 13, 2000, meaning that he was two days short of his sixteenth birthday when he shot Crawford and L.B.

¶ 4 Before defendant was indicted, the trial court did not hold a transfer hearing pursuant to section 5-805 of the Act (705 ILCS 405/5-805 (West 2016) (setting forth criteria for presumptive or discretionary transfer of a juvenile)) or designate the proceeding as an extended jurisdiction juvenile prosecution under section 5-810 of the Act (705 ILCS 405/5-810 (West 2016)). Nor does the record suggest that defendant waived a transfer hearing. Instead, it appears that the State filed defendant's case in criminal court pursuant to section 5-130(1)(a) of the Act, which is the automatic transfer provision. Section 5-130(1)(a) provides:

> "The definition of delinquent minor under Section 5-120 of this Article shall not apply to any minor who at the time of an offense was at least 16 years of age and who is charged with: (i) first degree murder, (ii) aggravated criminal sexual assault, or (iii) aggravated battery with a firearm as described in Section 12-4.2 or subdivision (e)(1), (e)(2), (e)(3), or (e)(4) of Section 12-3.05 where the minor personally discharged a firearm as defined in Section 2-15.5 of the Criminal Code of 1961 or the Criminal Code of 2012.
>
> These charges and all other charges arising out of the same incident shall be prosecuted under the criminal laws of this State." 705 ILCS 405/5-130(1)(a) (West 2016).

¶ 5 On April 30, 2018, defendant agreed to plead guilty to count IV of the indictment (first-degree murder), but without a specification relating to the use of a firearm, and count XXII (aggravated battery with a firearm). Defense counsel told the court:

> "Judge, at this time we are going to enter into a plea agreement, a partially negotiated plea agreement, which would be an open plea without any promises as to a sentence, and the only real agreement is that the potential for gun language on the first

degree murder charge he would not [*sic*] be pleading to, and he'd be pleading to Count 4." The State responded, "It would be Count 4 and Counts [*sic*] 22, so it would be a count of first degree murder with no gun language." Per the agreement, the State amended count IV of the indictment to allege that defendant "struck"—rather than "shot"—Crawford, thereby causing his death.

¶ 6 At defendant's sentencing hearing, defendant's mother testified that defendant was negatively impacted by his father's murder when defendant was nine months old and by the death of his grandmother the summer before the shooting in this case. The court sentenced defendant to consecutive prison terms of 25 years for first-degree murder and 6 years for aggravated battery with a firearm.

¶ 7 Defense counsel filed a motion for reconsideration of the sentence but did not file a certificate pursuant to Illinois Supreme Court Rule 604(d) (eff. July 1, 2017). The trial court denied the motion. Defendant timely appealed, and appellate counsel moved for a summary remand based on the lack of a Rule 604(d) certificate. We vacated the denial of defendant's motion and remanded the matter for Rule 604(d) compliance. On remand, the court held a new hearing on defendant's motion to reconsider. The State and defense counsel characterized defendant's plea agreement as "open with a cap." They agreed that, under Rule 604(d), defendant could not seek reconsideration of his sentence without moving to withdraw his guilty plea. Defendant declined to file such a motion. Nonetheless, at a later date, the court addressed his motion to reconsider on the merits and denied it. Defendant timely appeals.

¶ 8 II. ANALYSIS

¶ 9 On appeal, defendant argues that defense counsel was ineffective for failing to seek his transfer to juvenile court after he was charged in criminal court under the automatic transfer

provision of section 5-130(1)(a) of the Act, which did not apply to him because he was under 16 years old at the time of the offenses. He argues that, had counsel objected and secured his transfer to juvenile court, any retransfer to criminal court would have been a discretionary transfer under section 5-805 of the Act (705 ILCS 405/5-805 (West 2016)); before such a transfer, he would have been entitled to a hearing on whether he should be prosecuted in criminal court and subject to adult penalties. Defendant notes that, alternatively, the State could have asked the court to designate the proceedings as an extended jurisdiction juvenile prosecution under section 5-810 of the Act (705 ILCS 405/5-810 (West 2016)). He argues that counsel's failure to object to the automatic transfer prejudiced him because "his adult sentence was imposed in violation of the [Act]." He, therefore, asks us to vacate his sentence so that his case can be transferred to juvenile court.

¶ 10 In response, the State argues that defendant waived his ineffectiveness claim, as a guilty plea waives all nonjurisdictional claims of error. The State also argues that defendant's claim essentially repudiates the terms of his plea agreement:

> "In exchange for defendant's guilty plea, the State agreed to remove firearm language from the charging instrument, significantly reducing [the] mandatory minimum he was facing and dramatically reducing his overall potential sentencing range. And the parties' agreement clearly encompassed an adult sentence, as indicated by the guilty plea proceedings and defendant's express understanding of the sentencing ranges he faced. Defendant's current action, in effect, is an attempt to hold the State to its end of the bargain while unilaterally seeking relief from his end of the bargain. [Citation.] 'That result certainly would not advance our policy of encouraging properly administered plea bargains.' [Citation.]."

At oral argument, and in a subsequent motion to cite additional authority, the State characterizes defendant's plea as a partially negotiated plea because the State made a sentencing concession in amending count IV to allege that defendant struck Crawford rather than shot him; the State thereby eliminated defendant's exposure to an add-on sentence for personal discharge of a firearm. The State asserts that, because the plea was partially negotiated, defendant could not challenge his sentence, as he does now, without seeking to withdraw the plea.

¶ 11 The State argues in the alternative that defendant has failed to show prejudice from counsel's omission: "Had trial counsel objected to the transfer of defendant's case to adult court, a discretionary transfer hearing would have undoubtedly been held, and the trial court would have undoubtedly transferred defendant's case."

¶ 12 In reply, defendant argues first that his plea to murder and aggravated battery with a firearm did not involve any sentencing concessions, so he is free to raise matters about sentencing, including his claim that counsel's omission denied him "the opportunity to be sentenced as a juvenile pursuant to the [Act]." He notes that *People v. Price*, 2018 IL App (1st) 161202, ¶¶ 24-25, recognizes that a defense attorney may be found ineffective for failing to seek a defendant's transfer to juvenile court for sentencing. Thus, according to defendant, it is proper to frame the issue here as one of sentencing, which his guilty plea did not cover. He also cites *Price* for the proposition that, to demonstrate prejudice, he need show only that the trial court would have granted a motion to transfer the case to juvenile court; he need not *further* show that the trial court would have denied a motion by the State to transfer the case *back* to criminal court for sentencing. See *Price*, 2018 IL App (1st) 161202, ¶¶ 24-25.

¶ 13 A. Guilty Plea

¶ 14 We first address the State's argument that defendant's plea involved a sentencing concession by the State so that his argument that counsel should have sought sentencing under the Act conflicts with his plea agreement. Were the State correct about this, we would have no option but to dismiss defendant's appeal. Rule 604(d) provides:

> "No appeal shall be taken upon a negotiated plea of guilty challenging the sentence as excessive unless the defendant, within 30 days of the imposition of sentence, files a motion to withdraw the plea of guilty and vacate the judgment. For purposes of this rule, a negotiated plea of guilty is one in which the prosecution has bound itself to recommend a specific sentence, or a specific range of sentence, or where the prosecution has made concessions relating to the sentence to be imposed and not merely to the charge or charges then pending." Ill. S. Ct. R. 604(d) (eff. July 1, 2017).

Compliance with Rule 604(d) is a condition precedent for an appeal from a defendant's plea of guilty. Where the defendant has not filed the required postplea motion, the appellate court must dismiss the appeal. *People ex rel. Alvarez v. Skryd*, 241 Ill. 2d 34, 40 (2011).

¶ 15 We hold that the State made a concession as to charging, not sentencing. Therefore, defendant was free to challenge his sentence without seeking to withdraw his guilty plea. The State contends, however, that its removal of the firearm reference from count IV reduced the maximum sentence defendant could receive and, thus, was a sentencing concession. The State is incorrect on two levels. The State's intent in amending count IV to state that defendant "struck" Crawford rather than "shot" him, consistent with its dismissal of the murder charges that specifically included the firearm enhancement elements, was to make clear that it did not wish to expose defendant to the firearm enhancement. See *People v. White*, 2011 IL 109616, ¶ 27 (mandatory

firearms enhancement triggered where factual basis for plea establishes that firearm was used in commission of murder).

¶ 16 But more fundamentally, the State misunderstands the difference between charging concessions and sentencing concessions. Under the United States Supreme Court's holding in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), "facts that expose a defendant to a punishment greater than that otherwise legally prescribed [are] by definition 'elements' of a separate legal offense." *Apprendi*, 530 U.S. at 483 n.10; see also *People v. Jackson*, 199 Ill. 2d 286, 295-96 (2002) (citing *Apprendi* on this point). Thus, even if the amendment to count IV was necessary to make the firearm enhancement inapplicable, the State was still reducing the charge, not making a sentencing concession. Put another way, under *Apprendi* principles, the fact that first-degree murder with a firearm enhancement requires proof of an additional element makes it a *separate offense* despite its not having a separate name.

¶ 17 We give no weight to defense counsel's agreement on remand that the plea was "open with a cap." That characterization was inconsistent with the plea terms presented at sentencing, where the parties made clear that the State's only concession was to amend count IV to eliminate the firearm specification. As noted, defense counsel told the court:

> "Judge, at this time we are going to enter into a plea agreement, a partially negotiated plea agreement, which would be an open plea without any promises as to a sentence, and the only real agreement is that the potential for gun language on the first degree murder charge he would not [*sic*] be pleading to, and he'd be pleading to Count 4."

Under *Apprendi* principles, the concession presented here pertained to charging, not sentencing.

¶ 18 The State, in its motion for leave to cite additional authority, relies on the statement in *People v. Diaz*, 192 Ill. 2d 211, 225 (2000), that, "if a plea agreement limits or forecloses the State

from arguing for a sentence from the full range of penalties available under law, in order to challenge his sentence, a defendant must first move to withdraw his plea in the trial court." This holding has no application here. The plea agreement to the charge as amended did not foreclose the State from seeking any sentence available for the base offense of first-degree murder, to which defendant pled guilty. *Cf. People v. Lumzy*, 191 Ill. 2d 182, 187 (2000) (defendant may appeal sentence without withdrawing plea where certain charges with higher sentencing ranges were dropped so long as plea to remaining charge is completely open).

¶ 19 We thus conclude that a motion to withdraw defendant's plea was not a condition precedent to his appeal. We now move to the merits of the appeal.

¶ 20 B. Waiver

¶ 21 We begin with the State's contention that defendant's guilty plea waived any argument based on the lack of a proper transfer proceeding. "It is well established that a voluntary guilty plea waives all non-jurisdictional errors or irregularities ***." (Internal quotation marks omitted.) *People v. Sophanavong*, 2020 IL 124337, ¶ 33. However, no authority suggests that a guilty plea waives matters that may be raised at sentencing. Despite the plea, defense counsel could have raised defendant's juvenile status as a sentencing issue. That is, the plea may have waived the error that no transfer hearing was held before the plea, but it did not waive the error that no transfer hearing was held before sentencing; these are separate errors. Two cases support this conclusion—*People ex rel. Alvarez v. Howard*, 2016 IL 120729, and *Price*.

¶ 22 *Howard* and *Price* concerned a January 1, 2016, amendment that increased the minimum age for automatic transfer to criminal court from 15 years old at the time of the offense to 16 years old at the time of offense. See Pub. Act 99-258, § 5 (eff. Jan. 1, 2016) (amending 705 ILCS 405/5-130(1)(a)). The question in *Howard* was whether the January 2016 amendment applied

retroactively; *Howard* held that it did, and *Price* explored the ramifications of that holding for a defendant who was convicted but not sentenced at the time of the amendment. See *Howard*, 2016 IL 120729, ¶ 28; *Price*, 2018 IL App (1st) 161202, ¶¶ 23-26.

¶ 23 The *Howard* court concluded that the January 2016 amendment applied to "pending cases." *Howard*, 2016 IL 120729, ¶ 28. It noted that " '[w]hether a defendant is tried in juvenile or criminal court is purely a matter of procedure.' " *Howard*, 2016 IL 120729, ¶ 28 (quoting *People v. Patterson*, 2014 IL 115102, ¶ 104). Consequently, a case *can* be moved from criminal court to juvenile court after the commencement of the proceedings. *Howard*, 2016 IL 120729, ¶¶ 31-33. (In *Howard*, the defendant's case was "pending" because the State had filed charges against him. *Howard*, 2016 IL 120729, ¶¶ 5, 32. In *People v. Hunter*, 2017 IL 121306, ¶¶ 29, 43, the supreme court clarified that a case pending on direct appeal is not "pending" under *Howard*.) Indeed, *Howard* was clear that where a defendant was automatically transferred to criminal court and his case was still "pending" when the January 2016 amendment rendered him ineligible for automatic transfer, his case *must be* transferred to juvenile court and remain there "unless and until it is transferred to criminal court pursuant to a discretionary transfer hearing." *Howard*, 2016 IL 120729, ¶ 35.

¶ 24 In *Price*, the First District examined *Howard*'s holding that the January 2016 amendment applied to "pending cases." *Price* reasoned that, because the sentence, not the conviction, is the final order in a criminal case, a case remains "pending" under *Howard* until sentencing. Thus, where a defendant, between his conviction and sentencing in criminal court, is rendered ineligible (via the January 2016 amendment) for automatic transfer, his case must be transferred to juvenile court if the required transfer hearing has not been held. See *Price*, 2018 IL App (1st) 161202, ¶¶ 20-22.

¶ 25 The *Price* court drew the proper conclusion from *Howard*. The sentence is the final judgment in a criminal case. *E.g.*, *People v. Vara*, 2018 IL 121823, ¶ 14. Thus, proceedings between conviction and sentencing are "pending" under *Howard*. Where the January 2016 amendment made a defendant no longer eligible for automatic transfer, allowing the defendant's presentencing transfer to juvenile court while permitting the State to seek *retransfer* serves the ends of justice by preventing a juvenile from being arbitrarily sentenced as an adult.

¶ 26 We recognize that the amendment discussed in *Howard* and *Price* was in effect before defendant committed the offenses charged here. Thus, there is no issue of retroactivity here; rather, defendant's automatic transfer to criminal court was apparently an oversight. Nonetheless, *Howard* and *Price* have relevance here. Under the rule in *Price*, defense counsel could have sought defendant's transfer to juvenile court after defendant entered his plea. Therefore, defendant's ineffectiveness claim was not waived by his guilty plea.

¶ 27 C. Ineffective Assistance of Counsel

¶ 28 Having rejected the State's waiver argument, we turn to the merits of defendant's claim. A claim that a defendant was denied his constitutional right to the effective assistance of counsel is governed by the familiar two-pronged test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Brown*, 2017 IL 121681, ¶ 25. "Under *Strickland*, a defendant must establish that his counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by counsel's deficient performance." *Brown*, 2017 IL 121681, ¶ 25. Counsel's performance is measured by "an objective standard of competence under prevailing professional norms." *People v. Evans*, 186 Ill. 2d 83, 93 (1999). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. Rather, "[t]he defendant must show that

there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The ineffectiveness of trial counsel may properly be raised for the first time on appeal; in such instances, our consideration of the issue is equivalent to a *de novo* review. *People v. Jefferson*, 2021 IL App (2d) 190179, ¶ 26.

¶ 29 First, we hold that no plausible reason exists for defense counsel not to seek defendant's sentencing under the Act. Under *Howard*, the trial court would be required to grant defendant's request for a transfer to juvenile court. If the State then petitioned for a discretionary transfer *back* to criminal court, the trial court would have to apply section 5-805(3)(b)(ii) of the Act (705 ILCS 405/5-805(3)(b)(ii) (West 2016)), which states that a court faced with a transfer petition must consider, *inter alia*,

> "the history of the minor, including:
>
> ***
>
> (B) any previous abuse or neglect history of the minor, and
>
> (C) any mental health, physical, or educational history of the minor or combination of these factors."

Although the mental health and abuse factors might be addressed to an extent at sentencing, a transfer hearing would accentuate them in a way that a sentencing hearing would not. It was unreasonable for defense counsel not to secure a transfer to juvenile court, because a transfer *back* to criminal court would not have been inevitable but, rather, a matter for the trial court's discretion under the statutory factors. Hence, the first prong of the *Strickland* standard is satisfied.

¶ 30 Citing *Price*, defendant argues that, to demonstrate prejudice, it is enough to show that the trial court should have granted a presentencing motion to transfer him to juvenile court; he need

not *also* show that he would have remained in juvenile court for sentencing. That is an accurate reading of *Price*, which stated:

> "There can *** be little doubt that [the defendant] was prejudiced by his counsel's failure [to seek a transfer]. To demonstrate prejudice, a defendant asserting ineffective assistance of counsel must only demonstrate that there was a 'reasonable probability of a different result,' *i.e.*, 'a probability sufficient to undermine confidence in the outcome.' [*People v. Evans*, 209 Ill. 2d 194, 220 (2004).] Here, if [the defendant's] counsel had moved for retroactive application of amended section 5-130, then, as a matter of law, that motion should have been granted. [The defendant] could still have been sentenced as an adult, but only at the trial court's discretion." *Price*, 2018 IL App (1st) 161202, ¶ 25.

¶ 31 We think this analysis is correct in essence; a defendant who should have had a transfer hearing need not show more to establish prejudice. To understand why, we look to the United States Supreme Court's holding in *Kent v. United States*, 383 U.S. 541 (1966).

¶ 32 The defendant in *Kent* was 16 years old when District of Columbia (DC) police apprehended him as a suspect in various offenses. *Kent*, 383 U.S. at 543. Under the applicable DC statutes, his age made him "subject to the 'exclusive jurisdiction' of the Juvenile Court." *Kent*, 383 U.S. at 543. The defendant's attorney, on learning that the juvenile court intended to remit him to the district court, filed motions seeking to have the juvenile court retain jurisdiction and requesting access to his social services file in the juvenile court. *Kent*, 383 U.S. at 545-46. However,

> "[t]he Juvenile Court judge did not rule on these motions. He held no hearing. He did not confer with petitioner or petitioner's parents or petitioner's counsel. He entered an order reciting that after 'full investigation, I do hereby waive' jurisdiction of petitioner and directing that he be 'held for trial for [the alleged] offenses under the regular procedure of

the U.S. District Court for the District of Columbia.' He made no findings. He did not recite any reason for the waiver." *Kent*, 383 U.S. at 546.

¶ 33 On grant of *certiorari*, the defendant raised multiple claims; the Supreme Court addressed only "the infirmity of the proceedings by which the Juvenile Court waived its otherwise exclusive jurisdiction." *Kent*, 383 U.S. at 552.

¶ 34 The *Kent* Court held that, despite the broad discretion of the juvenile court, the transfer was improper:

> "[T]he statute [providing for transfer] contemplates that the Juvenile Court should have considerable latitude within which to determine whether it should retain jurisdiction over a child or—subject to the statutory delimitation—should waive jurisdiction. But this latitude is not complete. At the outset, *it assumes procedural regularity sufficient in the particular circumstances to satisfy the basic requirements of due process and fairness*, as well as compliance with the statutory requirement of a 'full investigation.' [Citation.]" (Emphasis added.) *Kent*, 383 U.S. at 552-53.

That latitude "does not authorize the Juvenile Court, in total disregard of a motion for hearing filed by counsel, and without any hearing or statement or reasons, to decide *** that the child will be *** transferred to jail along with adults, and that he will be exposed to the possibility of a death sentence instead of treatment for a maximum *** of five years." *Kent*, 383 U.S. at 553-54.

> "[T]here is no place in our system of law for reaching a result of such tremendous consequences without ceremony—without hearing, without effective assistance of counsel, without a statement of reasons. It is inconceivable that a court of justice dealing with adults, with respect to a similar issue, would proceed in this manner." *Kent*, 383 U.S. at 554.

"It is clear beyond dispute that the waiver of jurisdiction is a 'critically important' action determining vitally important *statutory* rights of the juvenile." (Emphasis added.) *Kent*, 383 U.S. at 556 (quoting *Watkins v. United States*, 343 F.2d 278, 282 (D.C. Cir. 1964)). Further,

> "[i]f a decision on waiver is 'critically important' it is equally of 'critical importance' that the material submitted to the judge—which is protected by the statute only against 'indiscriminate' inspection—be subjected, within reasonable limits having regard to the theory of the Juvenile Court Act, to examination, criticism and refutation." *Kent*, 383 U.S. at 563.

¶ 35 The *Kent* Court declined to hold that the error was harmless or was cured by the district court proceedings:

> "The Government urges that any error committed by the Juvenile Court was cured by the proceedings before the District Court. It is true that the District Court considered and denied a motion to dismiss on the grounds of the invalidity of the waiver order of the Juvenile Court, and that it considered and denied a motion that it should itself, as authorized by statute, proceed in this case to 'exercise the powers conferred upon the juvenile court.' [Citation.] But we agree [with a court of appeals decision] that 'the waiver question was primarily and initially one for the Juvenile Court to decide and its failure to do so in a valid manner cannot be said to be harmless error. It is the Juvenile Court, not the District Court, which has the facilities, personnel and expertise for a proper determination of the waiver issue.' " *Kent*, 383 U.S. at 563-64.

¶ 36 The form of the analyses in *Kent* and *Price* is akin to a structural error analysis. Structural errors "affect the framework within which the trial proceeds, rather than mere errors in the trial process itself." *People v. Moon*, 2022 IL 125959, ¶ 29. "Put another way, these errors deprive

defendants of basic protections without which a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence *** and no criminal punishment may be regarded as fundamentally fair." (Internal quotation marks omitted.) *Moon*, 2022 IL 125959, ¶ 29. In a case involving structural error, prejudice to the defendant is treated as inherent to the error. See, *e.g.*, *People v. Gaines*, 2020 IL 125165, ¶ 19 (in a case of structural error—where the trial mechanism is unreliable—prejudice to the defendant is presumed).

¶ 37 *Kent* is closely on point. It addresses a statutory right to juvenile court proceedings, not a constitutional one; nevertheless, it treats that statutory right as subject to due process requirements. Further, the inadequacies of the hearing in *Kent* are matched here by the complete lack of a hearing. And the conclusions in *Kent* and *Price* are essentially the same: there is no replacement for a transfer hearing. Regardless of whether one describes the error here as structural error, we deem that defendant was prejudiced by the absence of the safeguards associated with a transfer hearing.

¶ 38 In so concluding, we disagree with the State that *People v. Wells*, 2022 IL App (5th) 180458-U, shows that we may determine from the record that there was no prejudice—no reasonable probability that defendant's case, once transferred to juvenile court, would not simply be *retransferred* to criminal court for sentencing.

¶ 39 *Wells*, like *Price*, concerned a defendant affected by the retroactivity of the January 2016 amendment to the automatic transfer provision. *Wells*, 2022 IL App (5th) 180458-U, ¶ 37. In *Wells*, the defendant pleaded guilty to a murder he committed when he was 15 years old. *Wells*, 2022 IL App (5th) 180458-U, ¶¶ 10-12. He was 20 years old on January 1, 2016, when the amendment went into effect; he turned 21 on June 5, 2016. *Wells*, 2022 IL App (5th) 180458-U, ¶ 19. In August 2017, defense counsel, in response to *Howard*, moved for a transfer of the case to juvenile court, and the trial court granted the motion. *Wells*, 2022 IL App (5th) 180458-U, ¶ 20. The State then

petitioned for the defendant's discretionary transfer to criminal court. *Wells*, 2022 IL App (5th) 180458-U, ¶ 20. After the hearing, the court made findings consistent with those required for a discretionary transfer—addressing, for instance, the defendant's social history. *Wells*, 2022 IL App (5th) 180458-U, ¶ 21. However, it also noted "that the defendant was 22 years of age, and thus no advantages of treatment within the juvenile justice system existed." *Wells*, 2022 IL App (5th) 180458-U, ¶ 21. This was because, under section 5-105(10) of the Act (705 ILCS 405/5-105(10) (West 2016)), once a person turns 21, "the juvenile court no longer has statutory authority to proceed against the defendant in juvenile court." *Wells*, 2022 IL App (5th) 180458-U, ¶ 40. The court further stated that it had considered and rejected applying extended juvenile jurisdiction. *Wells*, 2022 IL App (5th) 180458-U, ¶ 21. It thus granted the State's discretionary transfer motion. *Wells*, 2022 IL App (5th) 180458-U, ¶ 21.

¶ 40 On appeal, the defendant argued first that his transfer to criminal court was improper because the State "failed to pursue either a transfer from juvenile court to criminal court or extended juvenile jurisdiction before the defendant turned 21." *Wells*, 2022 IL App (5th) 180458-U, ¶ 35. The *Wells* court rejected this claim. The court noted that, although the trial court did give weight to the fact that the defendant was 22 when it granted the discretionary transfer, "the *** actions taken by the trial court *** reflect a consideration of the same factors that the court would have considered if the defendant or the State raised this concern between January 1, 2016, the effective date of the amendment, and June 5, 2016, the defendant's twenty-first birthday." *Wells*, 2022 IL App (5th) 180458-U, ¶ 50. Thus, when the *Wells* court addressed defendant's second contention on appeal—that defense counsel was ineffective because he did not seek the defendant's transfer to juvenile court before he turned 21—the court cited its prior analysis to

conclude that the defendant suffered no prejudice from counsel's omission. *Wells*, 2022 IL App (5th) 180458-U, ¶ 65.

¶ 41 Notably, in reaching its conclusion on prejudice, the *Wells* court had before it the record generated by a full discretionary transfer hearing. See *Wells*, 2022 IL App (5th) 180458-U, ¶ 65. Here, in contrast, no discretionary transfer hearing took place. What evidence might have been adduced at such a hearing is simply a matter of speculation. Thus, *Wells* is inapposite.

¶ 42 D. Remedy

¶ 43 Having concluded that defense counsel was ineffective in failing to seek a presentencing transfer to juvenile court, we address the matter of remedy. Defendant asks that we "vacate his sentence and give the State ten days from the date on which the sentence is vacated to file a petition requesting a hearing under section 5-130[(1)(c)(ii)] of the [Act (705 ILCS 405/5-130(1)(c)(ii) (West 2016)]." He asks that, "[i]f the [trial] court finds [that he] is not subject to adult sentencing this Court should direct the trial court to discharge the proceedings against him."

¶ 44 Subsection (1)(c)(ii) of section 5-130, the automatic transfer provision, is not directly applicable to the circumstances here. Section 5-130 (1)(c)(ii) provides that, if a defendant who was transferred according to section 5-130 is found to have committed an offense that was *not* subject to automatic transfer, that fact

> "shall not invalidate the verdict or the prosecution of the minor under the criminal laws of the State; however, unless the State requests a hearing for the purpose of sentencing the minor under Chapter V of the Unified Code of Corrections [(730 ILCS 5/ch. V (West 2016))], the Court must proceed under [the relevant juvenile sentencing provisions of the Act]." 705 ILCS 405/5-130(1)(c)(ii) (West 2016).

The *Price* court held that section 5-130(1)(c)(ii) provides a template for presentencing proceedings to determine whether a defendant who no longer meets the criteria for automatic transfer should be sentenced under the Unified Code of Corrections (Code) or the Act:

> "This precise situation is not expressly contemplated by the [Act], but we believe that subsection (1)(c)(ii) of the automatic transfer statute, although it does not specifically apply here, reflects the legislature's understanding of what will happen when a defendant who was properly charged and tried as an adult no longer meets the requirements for automatic transfer. That section provides for the defendant to be sentenced as a juvenile unless, within 10 days, the State files a written motion requesting a hearing for the trial court judge to decide whether the defendant should be sentenced as an adult under the [Code]. At such a hearing, the court is directed to consider many of the same factors a court addresses when ruling on a motion for presumptive or discretionary transfer ***." *Price*, 2018 IL App (1st) 161202, ¶ 28.

¶ 45 We deem that this procedure is equally applicable to defendant. Following the outline of *Price*, we vacate defendant's sentence and remand the cause to the trial court for the State to have the option to seek defendant's sentencing as an adult under the Code. See *Price*, 2018 IL App (1st) 161202, ¶ 31.

¶ 46 III. CONCLUSION

¶ 47 For the reasons set out above, we vacate the sentence imposed by the circuit court of Winnebago County and remand the cause with directions to give the State 10 days to file—if it so chooses—a petition requesting a hearing based on section 5-130(1)(c)(ii) of the Act to decide whether defendant should be sentenced as a juvenile under the Act or as an adult under the Code. See *id.*

¶ 48 Judgment vacated.

¶ 49 Cause remanded with directions.

*People v. Carwell*, 2022 IL App (2d) 200495

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Winnebago County, No. 16-CF-3032; the Hon. Randy Wilt, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Sarah Curry, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | J. Hanley, State's Attorney, of Rockford (Patrick Delfino, Edward R. Psenicka, and Steven A. Rodgers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |